PSYCHCARE MANAGEMENT,
INC., Appellant,

v.

DEPARTMENT OF SOCIAL SERVICES,
DIVISION OF MEDICAL SERVICES,
Respondent.

No. 80562.

Supreme Court of Missouri,
En Banc.

Dec. 1, 1998.

Richard D. Watters, St. Louis, for Appellant.

Kathleen Knepper, Dept. of Social Services, Division of Legal Services, Jefferson City, for Respondent.

Lori J. Levine, Gerald M. Sill, Jefferson City, for Amicus Curiae.

PER CURIAM.[1]

Psychcare Management, Inc., appeals the circuit court's judgment reversing in part and affirming in part the decision of the Administrative Hearing Commission concerning the per diem Medicaid rate at Royal Oaks Hospital in Windsor. The circuit court's judgment is reversed, and the cause is remanded to that court with directions that it order the commission to recalculate Royal Oaks' per diem Medicaid rate.

Psychcare operated Royal Oaks Hospital. The department of social services licensed the hospital to participate in the Missouri Medicaid program. The department set Royal Oaks' per diem Medicaid rate for the fiscal year ending June 30, 1995, at $350.33, and Psychcare objected to that rate. It contended that it was entitled to a Tier 1 designation as a disproportionate share hospital[2] rather than a Tier 2 designation. It also objected to the exclusion of certain services from its allowable costs in determining its per diem rate.

When the department persisted, Psychcare sought review by the commission. After an evidentiary hearing, the commission agreed with Psychcare that the department should have designated Royal Oaks as a Tier 1 hospital, but the commission excluded therapy costs from Royal Oaks' allowable costs and set its per diem rate lower than Psychcare's request. Both Psychcare and the department sought judicial review of the commission's decision. The circuit court reversed the commission's decision that Royal Oaks qualified for a Tier 1 designation but affirmed the commission's decision in all oth-

er respects. Psychcare appeals the circuit court's judgment.

■■ We review the commission's decision—not the judgment of the circuit court. *City of Cabool v. Mo. State Bd. of Mediation,* 689 S.W.2d 51, 53 (Mo. banc 1985). In reviewing the commission's decision, the Court may not determine the weight of the evidence or substitute its discretion for that of the administrative body; the Court's function is to determine primarily whether competent and substantial evidence upon the whole record supports the decision, whether the decision is arbitrary, capricious, or unreasonable, and whether the commission abused its discretion. *Greene County v. Hermel, Inc.,* 511 S.W.2d 762, 768 (Mo.1974). The temptation to substitute the Court's judgment on factual matters for the commission's fact-finding must be resisted. *EBG Health Care v. Dept. of Social Serv.,* 882 S.W.2d 143, 145 (Mo.App. 1994). Questions of law, on the other hand, are matters for the independent judgment of this Court. *Gammaitoni v. Director of Revenue,* 786 S.W.2d 126 (Mo. banc 1990).

In its first point, Psychcare contends that competent and substantial evidence supported the commission's decision that Royal Oaks qualified as a Tier 1 disproportionate share hospital. We agree.

Disproportionate share hospital status and tier levels are determined from data in a hospital's third prior year cost report. *13 CSR 70–15.010(6)(A).* To qualify as a Tier 1 disproportionate share hospital, Royal Oaks must establish that it had an "unsponsored care ratio" of 10 percent or greater. *13 CSR 70–15.010(6)(A)3.B.* The regulation sets out the formula for this ratio: the sum of a hospital's bad debt and charity care *divided by* its total net revenue. *Id.*

■ The parties do not contest that Royal Oaks had $27,734.91 in bad debts for 1992. In calculating Royal Oaks' unsponsored care

---

1. The appeal in this case was originally decided by the Court of Appeals, Western District, in an opinion written by the Honorable Paul M. Spinden. Following transfer to this Court, the court of appeals opinion, as modified, is adopted as the opinion of the Court.

2. A disproportionate share hospital serves a greater proportion of low-income patients with special needs than other hospitals. It is, therefore, entitled to a more generous rate.

ratio for 1992, the department determined that Royal Oaks had no bad debts and an unsponsored care ratio of 7.1 percent. The commission, however, determined that Royal Oaks had $27,734.91 in bad debts and an unsponsored care ratio of 15 percent.[3] The commission concluded that because the unsponsored care ratio was more than 10 percent, Royal Oaks qualified as a Tier 1 disproportionate share hospital for state fiscal year 1995.

The department argues that, when it determined that Royal Oaks did not qualify as a Tier 1 disproportionate share hospital, the bad debt information Psychcare submitted was not legible and that the department's personnel could not observe the information on the cost report. The bad debt information submitted to the department was barely legible. Only the bottom half of the words and numbers were at the top of a page on the hospital's income statement. Nevertheless, the commission found that Psychcare reported $27,734.91 in bad debts in a report received by the department on May 12, 1993. The commission's finding was supported by competent and substantial evidence based on the whole record. The circuit court erred in substituting its finding for that of the commission. See *EBG Health Care.*

In its next point, Psychcare contends that the commission's exclusion of certain therapies from its allowable costs was reversible error. It argues that the commission erroneously based its decision on regulations that were not valid during the pertinent time.

In its findings of fact, the commission noted that the department had published provider bulletins, "collectively known as the Provider Manual," to inform providers which services were included in allowable costs. Not included were occupational therapy, medical social services, psychological and family counseling, and recreational therapy.

Psychcare complains that the department did not make the provider manual applicable as a rule until February 26, 1994, two months after the close of its 1993 cost report year. "Because the Provider Manual was not properly promulgated as a rule at any time in 1993," Psychcare argues, "it cannot be used to exclude costs from Royal Oaks' 1993 cost report and the decision of the [commission] must be reversed[.]"

■ The commission did not address the issue, noting, "We have no power to decide whether [the department's regulations are] constitutional. . . . We must simply presume that [they are] and construe [them] to be so." This Court does have the authority to review the validity of the department's regulations, *Adams Ford Belton v. Motor Vehicle Com'n,* 946 S.W.2d 199, 201 (Mo. banc), cert. denied, —— U.S. ——, 118 S.Ct. 374, 139 L.Ed.2d 291 (1997).

■ The department adopted the provider manual as an emergency rule on February 26, 1994, in apparent response to this Court's decision in *NME Hospitals v. Dept. of Social Serv.,* 850 S.W.2d 71 (Mo. banc 1993), that the department was unlawfully applying the standards of the provider manual without promulgating them as regulations. Section 536.025.4, RSMo 1994,[4] mandated that the emergency rule may be in effect for no more than 120 days. Thus, the rule's effectiveness ended on June 25, 1994. The department endeavored to renew the emergency rule to apply from June 26, 1994, to October 23, 1994. The department, however, did not have authority to renew the emergency rule. Not only did section 536.025.4 limit the emergency rule's effective duration to 120 days, section 536.025.5, RSMo 1994,[5] prohibited renewal of any emergency rule. "Erroneous regulations are a nullity . . . as regulations may be promulgated only to the extent of and within the delegated authority of the statute involved." *Bartlett & Co. Grain v. Director of Revenue,* 649 S.W.2d 220, 224 (Mo.1983). Only rules promulgated by an administrative agency with properly

---

3. Royal Oaks' charity care costs were $28,578, and its total net revenue was $370,503. The parties do not dispute these figures.

4. The General Assembly has since recodified this provision as section 536.025.5.

5. The General Assembly has since recodified this statute as section 536.025.6.

delegated authority have the force and effect of law. *Missouri Nat. Educ. v. Missouri State Bd.*, 695 S.W.2d 894, 897 (Mo. banc 1985). Therefore, the provider manual was not applicable to Psychcare's case. The department did not dispute Psychcare's contention that without the provider manual the therapy costs disallowed by the commission should have been included as allowable costs.

The circuit court's judgment affirming the commission's decision is reversed. The case is remanded to the circuit court for remand to the commission, with instructions that the commission recalculate and set the proper rate of Medicaid reimbursement for Royal Oaks for the fiscal year ending June 30, 1995.

All concur.