Melinda TATE, Appellant,

v.

DEPARTMENT OF SOCIAL
SERVICES, Respondent.

No. ED 75314.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 11, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 24, 2000.

Application for Transfer Denied
June 27, 2000.

**4**

Terry J. Flanagan, John W. Peel, St. Louis, MO, for appellant.

David S. Durbin, Department of Social Services, Division of Legal Services, Jefferson City, MO, for respondent.

## OPINION

JAMES R. DOWD, Judge.

Appellant Melinda Tate appeals from a Circuit Court judgment affirming an administrative decision finding Tate recklessly abused and caused the death of an elderly resident at a nursing home and that Tate's name should be placed on an Employee Disqualification List pursuant to RSMo. Section 660.315 (1994).[1] We affirm.

### FACTS

Appellant Melinda Tate, now Melinda Boggs (hereafter "Ms. Tate") was employed as a certified medical technician at St. Sophia Geriatric Center (hereafter "St. Sophia"). Ms. Tate's duties at St. Sophia included the care and feeding of the elderly residents. On October 13, 1994, at about 10:00 a.m., Ms. Tate fed Edna Weber, a ninety-four year old resident. Ms. Tate used a bulb-syringe to place a portion of Ensure, a thick liquid dietary supplement, into Ms. Weber's mouth. Ms. Weber protested, saying "I can't take anymore," but Ms. Tate continued feeding her. After the feeding, Ms. Tate left for lunch.

Approximately fifteen minutes later, a nurse noticed Ms. Weber slumped over in her wheelchair. Ms. Weber was having trouble breathing and her lips were blue. The nurse and others attempted to suction fluid from Ms. Weber's lungs to facilitate her breathing. The suctioning produced a liquid substance the nurses believed to be Ensure. About fifteen minutes later, Ms. Weber died. Her treating physician, Dr. Sosnoff, stated her cause of death was due to aspiration from pneumonia.

On October 24, 1994, a complaint was filed with the Missouri Department of Social Services, Division of Aging (hereafter "the Department") alleging Ms. Tate had continued to feed Ms. Weber Ensure even after she had refused and indicated that

---

**1.** All references are to Missouri Revised Statutes 1994, unless otherwise noted.

she couldn't swallow anymore. The Department investigated the complaint and concluded that Ms. Tate had force fed Ms. Weber and caused her death.

On January 13, 1995, the Department notified Ms. Tate of their findings and indicated that Ms. Tate's name would be permanently placed on an Employee Disqualification List. The Employee Disqualification List is a record of the names of people who have been finally determined by the Department of Social Services to have recklessly, knowingly or purposely abused or neglected a resident while employed in any facility. The Employee Disqualification List, as required by Section 660.315, RSMo, is provided to other state departments upon request and to any person, corporation or association who: (1) Is licensed as an operator under chapter 198, RSMo; (2) Provides in-home services under contract with the department; (3) Employs nurses and nursing assistants for temporary or intermittent placement in health care facilities; (4) Is approved by the department to issue certificates for nursing assistants training; or (5) Is an entity licensed under chapter 197, RSMo.

Ms. Tate challenged the Department's decision to place her name on the Employee Disqualification List and an administrative hearing was held on July 17, 1996. Ms. Tate was represented by counsel at the hearing and she was allowed to present evidence, call witnesses and to cross-examine the Department's witnesses. Several witnesses testified on behalf of the Department. One witness testified that she saw Ms. Tate continue to feed Ms. Weber Ensure via a bulb syringe even after Ms. Weber protested, saying, "I can't take anymore." Other witnesses testified that, after they discovered Ms. Weber wasn't breathing, they suctioned a fluid from Ms. Weber's lungs which they believed to be Ensure. In addition, Dr. Mary Case testified that she exhumed Ms. Weber's body, performed an autopsy and found material in Ms. Weber's pulmonary airway. Dr. Case described the material blocking Ms. Weber's airway as a thick pink liquid similar to the liquid found in her stomach. Dr. Case concluded that Ms. Weber died "as a result of aspiration of liquid food as a result of forced-feeding." No witnesses testified on behalf of Ms. Tate.

During the course of the hearing, Ms. Tate submitted into the record a subpoena duces tecum, which had been duly authorized and served upon St. Sophia prior to the hearing. The subpoena requested, among other things, Dr. Sosnoff's notes about Edna Weber and various nurses notes. St. Sophia refused to turn the documents over to Ms. Tate, stating they believed the documents to be privileged and therefore not discoverable. Ms. Tate and the hearing officer agreed to leave the record open for a period of time to allow Ms. Tate's counsel to seek enforcement of the subpoena in the Circuit Court. Ms. Tate's counsel neither objected to this arrangement nor did she ever seek enforcement of the subpoena. The subpoena was never enforced.

On April 11, 1997, the Department issued a thirty-four page Decision and Order signed by the Director of the Division of Aging finding that Ms. Tate had recklessly abused an elderly resident of St. Sophia Geriatric Center and that Ms. Tate's name should be placed on the Employee Disqualification List. On May 1, 1997, Ms. Tate filed a Petition for Review of Administrative Decision in the Circuit Court of St. Louis County. On April 16, 1998, Ms. Tate filed a Motion for an Evidentiary Hearing with the Circuit Court. On July 22, 1998, the Circuit Court issued its Judgment and Order denying Ms. Tate an evidentiary hearing and affirming the Department's decision. This appeal followed.

## STANDARD OF REVIEW

This court reviews the decision of the administrative agency, and not that of the trial court. *Missouri Ethics Com'n v. Thomas*, 956 S.W.2d 456, 457 (Mo.App. W.D.1997). We must determine whether

competent and substantial evidence supported the agency's decision, the agency's decision was arbitrary, capricious, or unreasonable, or whether the agency abused its discretion. *Psychare Management, Inc. v. Dep't of Social Services Div. of Medical Services*, 980 S.W.2d 311, 312 (Mo. banc 1998). The evidence is considered in a light most favorable to the administrative agency's finding, together with all favorable inferences which support it. *State ex rel. Drury Displays, Inc. v. City of Olivette*, 976 S.W.2d 634, 635 (Mo. App. E.D.1998). An Administrative law judge's decision is presumed correct and the burden in challenging such a decision is heavy. *State ex rel. Sure–Way Transp., Inc. v. Division of Transp. Dept. of Economic Development, State of Mo.*, 836 S.W.2d 23, 25 (Mo.App. W.D.1992). Where evidence could support a finding either way, an appellate court is bound to uphold the decision of the agency. *Weber v. Firemen's Retirement System*, 899 S.W.2d 948, 951 (Mo.App. E.D.1995).

## ANALYSIS

On appeal, Ms. Tate argues that the Department erred in finding that she recklessly abused an elder because its decision was not supported by substantial and competent evidence. We disagree.

■ Ms. Tate was afforded a full evidentiary hearing during which her attorney was allowed to introduce evidence on her behalf, elicit testimony from her own witnesses and cross examine the Department's witnesses. Dr. Mary Case, the Chief Medical Examiner, testified that she performed an autopsy on Ms. Weber's exhumed body. Dr. Case testified in her professional opinion that Ms. Weber died as a result of being force-fed liquid supplement. Other witnesses testified that Ms. Tate administered the liquid supplement to Ms. Weber and that Ms. Weber protested the feeding. Ms. Tate further testified that she fed Ms. Weber 20 cc's of liquid, in direct violation of accepted medical practices mandating that only 15 cc's of liquid be administered at a time. We find this evidence overwhelmingly supports the Department's decision that Ms. Tate recklessly abused Ms. Weber.

■ Ms. Tate argues that there is evidence in the record which conflicts with the evidence upon which the Department based its decision. In particular, Ms. Tate points to the fact that Dr. Case's testimony conflicts with Dr. Sosnoff's initial determination that Ms. Weber's death was caused by pneumonia. Ms. Tate also points to discrepencies in the testimony regarding the color of the liquid found in Ms. Weber's lungs. "The fact that the record also contains evidence in conflict with the finding of the [administrative agency] is not grounds for reversal on appeal." *Weber*, 899 S.W.2d at 950. The determination of a witnesses' credibility is the function of the administrative tribunal. *Id.* at 951. This court has held that, when testimony or other evidence is in conflict in an administrative proceeding, "we defer to the agency's expertise and findings with regard to the credibility of witnesses, and 'if the evidence permits either of two opposed findings, we should accept the findings of the administrative body,'" Likewise, the Missouri Supreme Court has recently cautioned that "[t]he temptation to substitute the Court's judgment on factual matters for the [administrative agency's] fact-finding must be resisted." *Psychare Management, Inc. v. Dep't of Social Services Div. of Medical Services*, 980 S.W.2d 311, 312 (Mo. banc 1998). In this case, the Department heard testimony from several witnesses. While some of that testimony conflicted, it was within the agency's discretion to believe some, all or none of that testimony in coming to its determination. It is not this court's job to weigh testimony or to reconcile conflicts in that testimony. Rather, we look only for competent and substantial evidence to support the agency's findings, of which there is an abundance in this case. Point denied.

In her other two points on appeal, Ms. Tate raises constitutional claims. In particular, Ms. Tate claims: (1) the Department impinged upon Ms. Tate's constitutional and statutory rights in failing to seek enforcement of a subpoena duces tecum in the Circuit Court; and (2) the Department applied an unconstitutional burden of proof.

The subpoena requested, among other things, Dr. Sosnoff's notes about Edna Weber and various nurses notes. St. Sophia refused to comply with the subpoena. Ms. Tate's counsel then asked the hearing officer to enforce the subpoena in the Circuit Court. The hearing officer directed Ms. Tate's counsel to enforce the subpoena in the Circuit Court, to which Ms. Tate's counsel agreed. Ms. Tate's counsel neither objected to the hearing officer's direction nor did he seek enforcement of the subpoena in the Circuit Court. On appeal, Ms. Tate claims the hearing officer erroneously applied RSMo Section 536.077, which states "[t]he agency shall enforce subpoenas by applying to a judge of the circuit court ..." Ms. Tate's counsel claims he should not have had to enforce the subpoena, rather the Department should have pursuant to Section 536.077. Ms. Tate claims the hearing officer's failure to enforce the subpoena impinged upon her constitutional and statutory rights to present evidence.

■■■ Constitutional issues not raised at the first opportunity are deemed waived. *Lemay Bldg. Corp. v. Director of Revenue,* 889 S.W.2d 835, 837 (Mo. banc 1994). When a party is challenging the application of a statute before an administrative agency on constitutional grounds, that party must raise the constitutional issue and preserve it for appeal before the agency. *Duncan v. Missouri Bd. for Architects, Professional Engineers and Land Surveyors,* 744 S.W.2d 524, 531 (Mo.App. E.D.1988). The purpose of the rule is to bring to the attention of the tribunal the constitutional objection to the tribunal's proposed application of the statute and

allow the tribunal to correct itself. *Id.* "Moreover, '[i]t is imperative to an efficient and fair administration of justice that a litigant may not withhold his objections, await the outcome, and then complain that he was denied his rights if he does not approve the resulting decision.' " *Brotherhood of Locomotive Engineers Intern. Union v. Union Pacific R. Co.,* 134 F.3d 1325, 1331 (8th Cir.1998) (quoting *Brotherhood of R.R. Trainmen v. Chicago, Milwaukee, St. Paul & Pac. R.R.,* 380 F.2d 605, 608–09 (D.C.Cir.1967)).

■■■ On appeal, Ms. Tate is now challenging the hearing officer's application of Section 536.077 on constitutional grounds. During the hearing, the hearing officer informed Ms. Tate's counsel that he would have to seek enforcement of the subpoena in the Circuit Court. Ms. Tate's counsel neither objected to the hearing officer's direction nor did he make any mention of the constitutional issues he now raises. In fact, Ms. Tate's counsel agreed with the hearing officer that the record should be kept open while counsel went to the Circuit Court to seek enforcement of the subpoena. A party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial. *In re Marriage of Glueck,* 913 S.W.2d 951, 956 (Mo.App. E.D.1996). Ms. Tate's counsel did not bring any error to the attention of the tribunal, thus he did not afford the tribunal the opportunity to correct any application of the statute in question. Therefore, we find that Appellant has failed to preserve her constitutional claim regarding the enforcement of the subpoena issue. Point denied.

Ms. Tate also claims the agency applied the wrong standard of proof—an error which Ms. Tate claims injured her constitutional rights. Ms. Tate failed to preserve this point as well. Her counsel made no objection at the administrative hearing level. Assuming that Ms. Tate had preserved these claims, they do not have merit. Initially, appellant has confused the terms burden of proof, standard

of proof, and standard of review in her briefs to this court. They are three separate legal principles. The burden of proof is the duty that the Department carries to prove its assertion that Ms. Tate abused Ms. Weber. The standard of proof in this case, as in most civil cases, is proof by a preponderance of the evidence. The standard of review, as applied by both the Circuit Court and the Court of Appeals, is whether there is competent and substantial evidence to support the agency's decision. The Department states in its Decision and Order:

> As the party endeavoring to change the status quo, the Agency shoulders the burden of establishing that the Claimant has engaged in abuse against a nursing home resident. The Agency has met its burden.

Ms. Tate argues that this passage indicates that the Department applied a "substantial and competent" standard of proof, a standard which she argues is lower than the required "preponderance of the evidence" standard. While the order is noticeably silent as to what standard of proof was employed, there is nothing in the record to suggest that Department applied anything less than a preponderance of the evidence standard. Indeed, the evidence presented at the hearing more than satisfies such a burden. Point denied.

The decision of the Department of Social Services, Division of Aging is affirmed with direction to the Department to enter Appellant's name on the Employee Disqualification List in accordance with Section 660.315.

GARY M. GAERTNER, P.J., concurs.

PAUL J. SIMON, J., concurs.