**EBG HEALTH CARE III, INC., d/b/a Woodland Manor, Respondent,**

v.

**MISSOURI HEALTH FACILITIES REVIEW COMMITTEE, Appellant.**

**No. WD 56314.**

Missouri Court of Appeals, Western District.

Feb. 15, 2000.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., Daryl Hylton, Asst. Atty. Gen., Jefferson City, for appellant.

Eugene G. Bushmann, Jefferson City, for respondent.

Before BRECKENRIDGE, C.J., LOWENSTEIN and ELLIS, JJ.

PATRICIA BRECKENRIDGE, Chief Judge.

The Missouri Health Facilities Review Committee (Committee) appeals the trial court's judgment reversing the decision of the Administrative Hearing Commission (AHC). The AHC ruled that under § 197.317, RSMo Cum.Supp.1998,[1] and the exception thereto contained in 19 CSR 60–50.400(5)(A)2D, the Committee could not issue a certificate of need to EBG Healthcare III, Inc., d/b/a Woodland Manor (EBG), which would allow EBG to transfer a portion of its licensed nursing home beds to a new facility. On appeal, EBG argues that (1) the AHC erred in finding that § 197.317 applied to prevent it from obtaining a certificate of need for the new facility; (2) if the exception to § 197.317 found in the regulation does not apply to EBG, then the regulation is invalid because it unlawfully extends or creates an exception to § 197.317; (3) the AHC erred in finding that EBG did not meet the requirements to qualify for a certificate of need under the exception to § 197.317 as stated in 19 CSR 60–50.400(5)(A)2D; and (4) if this court finds that § 197.317 and 19

---

1. All statutory references are to the Revised Statutes of Missouri Cumulative Supplement 1998, unless otherwise indicated.

CSR 60–50.400(5)(A)2D do not prevent the Committee from issuing a certificate of need to EBG, this court should review the evidence presented and decide that EBG has made the required showing of need to obtain a certificate of need. This court finds that the moratorium in § 197.317 applies to prohibit the Committee from issuing a certificate of need to EBG, and EBG did not qualify for the regulatory exception to the moratorium. This court also finds that EBG lacks standing to challenge the validity of the regulatory exception, as it was not adversely affected by the regulation's enforcement. The judgment of the trial court is reversed, and the AHC's decision is affirmed.

## Factual and Procedural Background

The Missouri Department of Social Services originally licensed EBG in 1974 to operate Woodland Manor as a skilled nursing facility with 180 beds. At that time, Woodland Manor had semi-private rooms. After April 1, 1996, however, EBG restructured Woodland Manor to provide private rooms instead of the semi-private rooms. There is no federal or state requirement that nursing homes offer their patients private rooms. The restructuring caused EBG to decrease its number of beds to 94, although it continued to be licensed for 180 beds. EBG then decided to build a second facility 9.1 miles from Woodland Manor to house its 86 other licensed beds in private rooms. EBG planned to own both Woodland Manor and the second facility. The cost for the second facility was estimated at $2,500,000. EBG preferred to build this second facility rather than renovate Woodland Manor or build a new facility on Woodland Manor's site, because EBG estimated that the cost of renovating Woodland Manor to accommodate 180 private rooms would be $6,465,701, and the cost of building a new facility on Woodland Manor's location would be $6,705,000.

On July 31, 1996, EBG filed its application with the Committee seeking a certificate of need to transfer 86 skilled nursing

facility beds from its existing facility to the new facility. To reallocate licensed beds from one nursing home facility's physical site to another physical site, the operator of the nursing home is required to obtain a certificate of need from the Missouri Health Facilities Review Committee (Committee). Section 197.305(12)(g), RSMo Cum.Supp.1996, and 197.315.1, RSMo 1994. At the time EBG proposed to build the second facility and transfer 86 beds to it, § 197.317 contained a statutory moratorium on the issuance of certificates of need in certain situations. One of the situations in which § 197.317 prohibited the issuance of a certificate of need was "[t]he reallocation of intermediate care or skilled nursing facility beds of existing licensed beds by transfer or sale of licensed beds between a hospital ... or a nursing care facility...." Section 197.317(3). A regulation, 19 CSR 60–50.400(5)(A)2D, contained an exception to § 197.317 for the reallocation of beds at a replacement facility under certain conditions. The Committee denied EBG's application after the Committee's staff found that EBG did not meet the conditions of the regulation's exception.

EBG then requested a hearing before the AHC. EBG argued to the AHC that the moratorium contained in § 197.317 did not apply to its application because it was not seeking approval for additional beds, and that if the moratorium did apply, EBG was within the regulation's exception for reallocating beds to a replacement facility. The AHC held a hearing in which both parties presented evidence. The parties stipulated that the sole issue on appeal to the AHC was whether § 197.317 applied to bar EBG's application, or whether EBG's application met the conditions for recognition of replacement beds as a possible exception to the moratorium as set forth in 19 CSR 60–50.400(5)(A)2D.

The AHC issued its Findings of Fact and Conclusions of Law on December 11, 1997. The AHC recited the stipulated facts and concluded that EBG was "clearly trying to transfer beds between two nurs-

ing care facilities, even if it will own both of them." The AHC rejected EBG's contention that its second building was merely an annex and not a separate facility to which EBG would transfer licensed beds. The AHC concluded that the moratorium of § 197.317 applied to prohibit the issuance of a certificate of need to EBG for their second facility. The AHC also discussed EBG's argument that it qualified under the regulatory exception to the moratorium for replacement beds. The AHC determined that the exception was applicable only when a nursing home operator had to replace an entire facility and relocate all of the licensed beds to the replacement facility because the original facility was outdated or inadequate and could no longer be used as a residential care facility. The AHC also determined that even if the regulatory exception did allow a transfer of less than all of a facility's licensed beds, EBG did not meet all of the exception's conditions. Thus, the AHC concluded that EBG was not entitled to a certificate of need for the new facility.

EBG appealed the AHC's order to the trial court. The trial court reversed the decision of the AHC, and granted EBG permission to transfer the beds to the new facility. The Committee then filed this timely appeal.[2]

## Standard of Review

On appeal, this court examines the AHC's decision, not the trial court's judgment. *Psychare Mgt. v. Dept. of Social Services,* 980 S.W.2d 311, 312 (Mo. banc 1998). The appellate court's function on review is limited to a determination of whether the AHC's action is supported by competent and substantial evidence, is arbitrary, capricious, or unreasonable, or constitutes an abuse of discretion. *Id.* This court will consider the evidence and all reasonable inferences from the evidence in the light most favorable to the adminis-

trative agency's findings. *Shell Oil Company v. Director of Revenue,* 732 S.W.2d 178, 180 (Mo. banc 1987). While this court cannot substitute its own judgment on factual matters, this court independently decides questions of law. *Psychare,* 980 S.W.2d at 312.

## The Moratorium Contained in Section 197.317 Applies to EBG's Certificate of Need Application

In its first point, EBG claims that its application for a certificate of need did not implicate the moratorium statute, § 197.317, because the application did not seek to add licensed nursing home beds or reallocate its beds to a level of care classification other than skilled nursing facility. EBG argues that its application was only a request to use some of its licensed beds at a different location.

EBG's point requires this court to interpret several statutes contained within §§ 197.300–197.366, the Missouri Certificate of Need Law. When interpreting a statute, courts are to "ascertain the intent of the legislature from the language used and give effect to that intent, if possible, and to consider the words used in their plain and ordinary meaning." *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 19 (Mo. banc 1995). Only when language is ambiguous, or when it leads to an illogical result, may courts look past the plain and ordinary meaning of a statute. *State ex rel. Md. Heights v. Campbell,* 736 S.W.2d 383, 387 (Mo. banc 1987). To determine whether a statute is clear and unambiguous, courts look to whether the language is plain and clear to a person of ordinary intelligence. *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). The plain and ordinary sense of a word is generally found in the dictionary. *Abrams v. Ohio Pacific Exp.,* 819 S.W.2d 338, 340 (Mo. banc 1991).

---

2. Pursuant to Rule 84.05(e), EBG filed the appellant's brief because it is the party aggrieved by the agency's decision, and the Committee filed the respondent's brief because it is the party aggrieved by the circuit court's decision.

The statute which sets forth when a developer or operator of a nursing home facility must obtain a certificate of need is § 197.315, RSMo 1994. This statute provides that "[a]ny person who proposes to develop or offer a new institutional health service within the state must obtain a certificate of need from the committee prior to the time such services are offered." Section 197.315.1, RSMo 1994. Section 197.305(12), RSMo Cum.Supp.1996, includes the following among its definitions of "new institutional health service:"

> (g) A reallocation by an existing health care facility of licensed beds among major types of service or *reallocation of licensed beds from one physical facility or site to another by more than ten beds or more than ten percent of total licensed bed capacity, whichever is less, over a two-year period.*

(Emphasis added).[3]

■ EGB attempts to avoid application of this definition to its proposed use of a portion of its beds at its new facility. The AHC found that even though EBG called its proposed facility, to be built 9.1 miles from the existing facility, an "annex," the proposed facility was actually a separate facility at another site. We agree. EBG proposed reallocating more than ten licensed beds from its Woodland Manor facility at its current site to a newly constructed facility at another site, an action that fits within the statutory definition of a new institutional health service. Thus, the plain language of §§ 197.305(12), RSMo Cum.Supp.1996, and 197.315, RSMo 1994, required EBG to obtain a certificate of need to reallocate 86 of its 180 licensed beds to a newly constructed facility at a different site.

At the time EBG applied to the committee for its certificate of need to transfer the beds to a second facility, § 197.317

contained a moratorium on the issuance of certificates of need for certain facilities.[4] Section 197.317, as it existed during the relevant time period, states:

> After July 1, 1983, no certificate of need shall be issued for the following:
>
> (1) Additional residential care facility I, residential care facility II, intermediate care facility or skilled nursing facility beds above the number then licensed by this state;
>
> (2) Beds in a licensed hospital to be reallocated on a temporary or permanent basis to nursing care or beds in a long-term care hospital meeting the requirements described in 42 C.F.R., section 412.23(e), excepting those which are not subject to a certificate of need pursuant to paragraphs (e) and (g) of subdivision (12) of section 197.305; nor
>
> (3) *The reallocation of* intermediate care facility or *skilled nursing facility beds of existing licensed beds by transfer* or sale *of licensed beds between* a hospital licensed under this chapter or *a nursing care facility licensed under chapter 198, RSMo;* except for beds in counties in which there is no existing nursing care facility.... However, after July 1, 1999, nothing in this section shall prohibit the Missouri health facilities review committee from issuing a certificate of need for additional beds in existing health care facilities or for new beds in new health care facilities or for the reallocation of licensed beds, provided that no construction shall begin prior to July 1, 2000.

\* \* \*

(Emphasis added).

■ The plain language of subdivision (1) prohibits the issuance of a certificate of need for additional licensed beds.

---

3. The definitions in § 197.305 are applicable to §§ 197.300 – 197.366, RSMo.

4. The moratorium continues to exist because the legislature amended § 197.317, effective July 1, 1999, to extend the moratorium to January 1, 2003, with construction not to begin prior to January 1, 2004. Section 197.317, RSMo Cum.Supp.1999.

As EBG applied only to transfer some of its existing licensed beds to a second facility, and not to obtain additional licensed beds, this subdivision does not apply to EBG's application. The plain language of subdivision (2) prohibits the issuance of a certificate of need for the reallocation of licensed hospital beds to nursing care or long-term care beds. EBG sought to transfer skilled nursing facility beds and not hospital beds, so subdivision (2) does not apply to EBG's application. The AHC found that EBG's application was subject to the provisions of subdivision (3) because EBG applied to reallocate its licensed beds by transferring them between two nursing care facilities. EBG argues that the term "reallocation" refers only to the change in classification of licensed beds from skilled nursing facility to another level of care classification such as residential care facility I, residential care facility II, or intermediate care facility. EBG contends that since it did not propose to change the skilled nursing facility classification of any of its licensed beds, it did not apply to "reallocate" its beds. EBG argues that a transfer of its licensed beds to a new facility without a change in the skilled nursing classification of the beds does not constitute a "reallocation."

■■■ The interpretation of subdivision (3)'s prohibition against the reallocation of existing licensed beds by transferring the beds between nursing care facilities hinges on the meaning of the words "reallocation" and "transfer." The dictionary generally provides the plain meaning of a word. *Abrams,* 819 S.W.2d at 340. The dictionary definition of "reallocate" is found by combining the definitions of the prefix "re-" and "allocate." The definition of "re-" is "again: anew." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1888 (1971). "Allocate" means "to apportion for a specific purpose or to particular persons or things." *Id.* at 57. "Transfer" is "to carry or take from one person or place to another." *Id.* at 2426–27. Using the dictionary definitions of the words "reallocate" and

"transfer," the plain meaning of subdivision (3) of § 197.317 prohibits the Committee from issuing a certificate of need to "again apportion for a specific purpose or to particular persons or things" skilled nursing facility beds by "carrying or taking from one person or place to another." From this reading of the statutory language, this court finds that the AHC was correct in concluding that the prohibition of subdivision (3) is not only against reallocating licensed beds between the various classifications, but also against reallocating licensed beds by apportioning them between an existing facility and another facility or place.

■■■ To restrict the meaning of "reallocate" as it is used in § 197.317 to include only a change in classification and not the transfer of beds from one site or facility to another, as EBG argues, would render superfluous language in § 197.305(12)(g), RSMo Cum.Supp.1996. Statutory provisions relating to the same subject matter are considered *in pari materia,* and are to be construed together. *Reece v. Reece,* 890 S.W.2d 706, 709–10 (Mo.App.1995). This court presumes that statutes *in pari materia* are intended to be read consistently and harmoniously. *Id.* at 710. "It is presumed that the legislature intended that every word, clause, sentence, and provision of a statute have effect. Conversely, it will be presumed that the legislature did not insert idle verbiage or superfluous language in a statute." *Hyde Park Housing Partnership v. Director of Revenue,* 850 S.W.2d 82, 84 (Mo. banc 1993).

As this court has already stated, § 197.305(12)(g), RSMo Cum.Supp.1996, provides that the definition of a "new institutional health service" which would require a certificate of need includes both "[a] reallocation by an existing health care facility of licensed beds among major types of service *or* reallocation of licensed beds from one physical facility or site to another . . . ." (Emphasis added). If the legislature meant to restrict the meaning of the

term "reallocation" to only changes in the level of care classifications of licensed beds, the words "among major types of service" which follow the term "reallocation" in the statute would be redundant and unnecessary. Rather, a finding that "reallocation" includes either a change in the level of care classification of licensed beds or a transfer of licensed beds from one physical facility or site to another gives meaning to every word of § 197.305(12)(g), RSMo Cum.Supp.1996. Therefore, this court finds that § 197.317(3) prohibited the Committee from granting EBG a certificate of need to reallocate its licensed beds by transferring them from its existing facility to its proposed facility at another site. EBG's first point is denied.

### EBG's Application is Not Within the Exception to the Moratorium

For the sake of clarity, EBG's second and third points will be reviewed out of order. As its third point on appeal, EBG argues that even if its application for a certificate of need was defeated by the moratorium statute, the Committee should have issued a certificate of need under the exception to § 197.317 stated in 19 CSR 60–50.400(5)(A)2D. This regulation provides that all licensed beds in nursing home facilities are subject to the moratorium on the issuance of certificates of need established in § 197.317, with the following exception for replacement facilities:

D. An exception may be recognized if an applicant proposes to replace an existing and operating facility under the following conditions:

(I) The applicant proposes to replace LTC beds at the same site or no more than fifteen (15) miles from their current location, so long as it is within the same county (or the City of St. Louis) as the beds being replaced, and the committee will consider whether or not the proposed location is the closest and most feasible for the replacement;

(II) The beds to be replaced shall have been initially licensed prior to July 1, 1965, or the applicant shall demonstrate that the facility in which the beds are currently located operates with significant inadequacies in design, function, fire/life safety or other concerns which may not be cost-effectively corrected; and

(III) The existing facility's beds shall be replaced at only one (1) site. The existing facility and proposed facility shall have the same owner(s), regardless of corporate or business structure, and the owner(s) shall stipulate that existing facility beds to be replaced shall not be used later for long term care[.]

\* \* \*

19 CSR 60–50.400(5)(A)2D.

The AHC agreed with the Committee's position that this regulation is valid only when the applicant is proposing to replace an entire facility with a second facility, relocate all of the beds to the second facility, and cease to use the former facility as a nursing home. This court does not need to decide, however, whether the regulation applies to a transfer of less than the total number of licensed better to a second facility, as the AHC also concluded that even if the regulation allowed a transfer of less than the total number of licensed beds, EBG still would not qualify under the exception.

 The AHC determined that EBG met the conditions set forth in subparagraph (I), in that its second facility would be 9.1 miles from its existing facility and remain in Greene County, and EBG met the some of the conditions in subparagraph (III), in that EBG planned to relocate the beds to one ·facility owned by EBG. The AHC concluded, however, that EBG did not meet the condition set forth in subparagraph (II) because EBG was first licensed in 1974 and EBG failed to demonstrate that its existing facility, Woodland

Manor, was inadequate "in design, function, fire/life safety or other concerns which may not be cost-effectively corrected." The AHC determined that the only "inadequacy" asserted by EBG was one of its own making: its decision to convert from semi-private to private rooms, thereby rendering Woodland Manor incapable of housing all of EBG's licensed beds. Because no state or federal law required EBG to provide private rooms for their residents, the AHC concluded that Woodland Manor's design was not "inadequate" under the regulation.

The parties presented conflicting evidence on the issue of Woodland Manor's alleged design inadequacies. Ewing B. Gourley, EBG's president, testified that he believes patients with certain medical conditions, such as psychological disorders and obesity, require and actually fare better in private rooms. Mr. Gourley and a licensed architect hired by EBG both testified that they believe EBG's inability to accommodate 180 private rooms in its present facility constitutes a design inadequacy. The Committee, however, offered evidence to the contrary. Betty Luckie, the administrator of one of EBG's competitor nursing homes in Springfield, testified that based upon her 30 years of experience in the long-term care facility industry, she does not believe that the inability to provide a private, rather than semi-private, room constitutes a design inadequacy. In her experience, even patients suffering from dementia or obesity do not require private rooms. Jeannie Rutledge, a program manager who had worked for the Division of Aging for almost 20 years and was familiar with Woodland Manor, testified that Woodland Manor did not, at the time of the hearing before the AHC, have any structural, fire, or life safety deficiencies. Ms. Rutledge also testified that the Division of Aging does not consider a facility's offering semi-private rather than private rooms to be a design or functional inadequacy.

Viewing the evidence in the light most favorable to the AHC's decision, this court agrees with the AHC's conclusion of law that the inability to provide private, rather than semi-private, rooms does not constitute a design or functional adequacy. Thus, because EBG did not demonstrate that Woodland Manor was inadequate in design, function, or other fire/life safety concerns, EBG did not meet the requirements of 19 CSR 60–50.400(5)(A)2D(II). As a result, EBG did not qualify for a certificate of need under the regulation's exception to the moratorium contained § 197.317. EBG's third point is denied.

### EBG Lacks Standing to Challenge the Validity of 19 CSR 60– 50.400(5)(A)2D

As its second point on appeal, EBG argues that 19 CSR 60–50.400(5)(A)2D is an unlawful exception to or extension of § 197.317. EBG insists that the regulation is unauthorized by law, beyond the scope of and contrary to the certificate of need law, and places an unreasonable and unauthorized burden on relocating nursing home beds.

Properly promulgated agency rules and regulations have the same force and effect as statutes. *See Division of Family Services v. Cade,* 939 S.W.2d 546, 551 (Mo.App.1997). This court determines standing to challenge an agency rule or regulation under the same standards as standing to challenge a statute or municipal ordinance. *See R.J.J. by Johnson v. Shineman,* 658 S.W.2d 910, 914 (Mo.App. 1983). "A party has standing to challenge the constitutionality of a statute (or rule or directive as the case may be) only insofar as it has an adverse impact on his own rights." *Id.*

In this case, the regulation EBG contends is invalid is an exception to the statutory moratorium on the issuance of certificates of need. *See* § 197.317; 19 CSR 60–50.400(5)(A)2D. EBG claims that it qualifies for the regulatory exception,

but if it does not qualify, then the exception is invalid. If EBG qualified for the exception, and the exception were enforced by this court, EBG would suffer no adverse consequences because it would be granted the relief it has requested. As the circumstances stand, however, EBG does not qualify for the exception and, therefore, is in no way affected by the regulation. Enforcement of the allegedly invalid regulation caused EBG no direct injury. The injury of which EBG complains was caused by § 197.317, as the moratorium in § 197.317 prohibited EBG from obtaining the certificate of need necessary to develop their second facility. Whether 19 CSR 60–50.400(5)(A)2D is valid or invalid is of no consequence in this case because in neither event is EBG adversely affected by the enforcement of the regulation. Therefore, EBG does not have standing to challenge the regulation's validity. EBG's second point is denied.

### Appellate Court May Not Evaluate "Need" Under the Certificate of Need Statute

As its final point on appeal, EBG argues that if neither the regulation nor statute prohibited it from obtaining a certificate of need, it was entitled to a certificate of need if it demonstrated need. This court has concluded, however, that the moratorium in § 197.317 prohibited the Committee from issuing a certificate of need to EBG for the new facility. This court has also determined that EBG does not qualify under the exception to the moratorium stated in 19 CSR 60–50.400(5)(A)2D. Therefore, even if EBG had demonstrated need, the moratorium prohibited the issuance of the certificate of need. EBG's point relied on implies as much, as it requests this court to examine whether EBG demonstrated need only if this court finds that the moratorium did not apply. Therefore, in light of this court's resolution of EBG's other points on appeal, this point is moot. EBG's fourth point is denied.

The judgment of the trial court is reversed, and the decision of the AHC is affirmed.

### Attorneys' Fees

EBG filed a motion for attorneys' fees on appeal. Because EBG is not the prevailing party, it is not entitled to attorneys' fees. Section 536.087.1, RSMo 1994. EBG's motion is denied.

All concur.