

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| FRANCISCO MORFIN, | ) | |
| | ) | |
| Appellant, | ) | WD77242 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | November 12, 2014 |
| ANGEL WERDEHAUSEN AND | ) | |
| FAMILY SUPPORT DIVISION, | ) | |
| | ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Jon E. Beetem, Judge

Before Division Three: Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

Appellant Francisco Morfin ("Father") appeals a Decision and Order ("Order") from the Family Support Division ("FSD") of the Missouri Department of Social Services in which Father received an abatement of child support in an amount that was less than he requested. Father argues that (1) he is entitled to a rehearing because he did not receive a full and fair hearing due to a language barrier in violation of his right to due process, and (2) he is entitled to the full abatement he requested because the Order is not supported by

substantial evidence. Because Father did not preserve his first point for review, and because there was substantial evidence to support the Order, we affirm.

## Factual and Procedural History

Father and Angel Werdehausen ("Mother") were married in Las Vegas, Nevada, in July 1991. They had three children and eventually moved to Missouri. On May 17, 2001, the Division of Child Support Enforcement ("DCSE") entered an order requiring Father to pay $528 a month in child support for his three children.[1] The order had an effective date of April 15, 2001, and was to continue until further order of DCSE or a court.

On July 6, 2001, Mother requested that enforcement of the DCSE child support order be closed. On January 2, 2009, Mother requested that enforcement of the DCSE child support order be re-opened. Up to that point, Father had not made any of the ordered payments.

Father and Mother separated in August 2009. Father first made a partial payment pursuant to his obligation under the DCSE child support order in December 2009. Payments in varied amounts were made each month thereafter through November 2012.

Dissolution proceedings were initiated at some point after the parties separated, and a decree of dissolution of marriage was entered on September 29, 2011. The dissolution decree acknowledged the emancipation of one of the three children born of the marriage, and awarded no child support going forward for the other two children

---

[1]The DCSE order indicates that a proceeding was initiated against Mother and Father by a Notice of Finding of Financial Responsibility pursuant to section 454.465.5, and that both parties failed to respond and were in default.

because the parenting plan envisioned that both Mother and Father would spend substantial time with the children.[2] The dissolution decree did not refer to the DCSE child support order, or to the arrearage owed by Father pursuant to that order. However, consistent with the terms of the order, Father's monthly child support obligation ceased accruing after the dissolution decree was entered.

On October 24, 2012, Father requested an abatement of the full amount of unpaid child support due and owing under the DCSE child support order, claiming he had been living with Mother and directly supporting the children from January 1, 2001 to August 1, 2009 when the parties separated.[3] Pursuant to section 454.475,[4] a hearing was scheduled on Father's request on December 20, 2012, before the Administrative Hearings Unit of the Missouri Department of Social Services.

Father, Mother, and an FSD technician were present at the hearing, which was conducted in part by telephone.[5] FSD provided an interpreter for the proceeding of its own initiative.[6]

The interpreter's credentials were not established on the record, and the interpreter was not sworn. The interpreter's translation of the hearing for Father was sporadic. Sometimes the interpreter was asked to translate the comments of a party immediately

---

[2]The record suggests that as of the time of judicial review of the administrative agency decision giving rise to this appeal, a motion to modify the decree of dissolution to require Father to pay child support was pending. The trial court conducting judicial review in this case denied Mother's request to consolidate judicial review of Father's abatement proceeding with the pending modification proceeding.

[3]A non-custodial parent is entitled to a credit for child support obligations when he provides direct support to the children while in his custody with the express consent of the custodial parent. *Saeuberlich v. Saeuberlich*, 773 S.W.2d 170, 171 (Mo. App. E.D. 1989).

[4]All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

[5]Father was not represented by counsel during the administrative hearing.

[6]Father is a Spanish-speaking permanent United States resident.

after that party spoke, while at other times extended discussion would take place before the interpreter would be asked to translate what had transpired. Some portions of the proceeding were not translated at all.[7] Father registered no objections during the hearing regarding use of the interpreter, or about the failure to establish the interpreter's credentials or to swear the interpreter as a witness. Father, through the interpreter, did express confusion about why Mother was insisting upon enforcement of the DCSE child support order, and about why FSD accrued his child support obligation during the period when enforcement of the child support order had been closed at Mother's request. However, Father gave no indication that he did not understand what was being said or asked of him during the proceedings. In fact, Father appears from the record to understand English, as his hearing testimony, which was tape recorded and transcribed, reflects that he responded to some questions from the hearing officer that were not first translated by the interpreter from English to Spanish.

During the hearing, Father argued that he resided with Mother and the children at all times between January 1, 2001 and August 1, 2009, and was only away from the marital home for a few days at a time. Father submitted joint tax returns from 2000-2007 and two notarized letters from relatives stating Father and Mother lived together with their children during the time period in question.

Mother disputed Father's testimony and said that the children primarily resided with her alone from January 1, 2001, to August 1, 2009. Mother acknowledged that Father resided with her and the children for six to eight months in late 2002 and early

---

[7]We are able to discern this by listening to the audio recording of the hearing.

2003 after she became ill and that Father provided direct financial assistance on other occasions. Mother testified that Father primarily resided with his sister after March 2003.

The FSD submitted a Child Support Debt Computation Worksheet which alleged that from April 15, 2001 (the effective date of the DCSE child support order) to December 3, 2012 (just prior to the hearing), the total support due from Father after crediting all payments made was $55,803.49. The FSD technician explained that when enforcement of a child support order is closed and re-opened, all support accumulated during the interim period becomes due and payable.

The hearing officer entered his Order finding both Mother and Father's testimony to be "unreliable." The hearing officer found the FSD technician's testimony that Mother had closed enforcement of the DCSE child support order between July 6, 2001 and January 1, 2009 to be credible. The hearing officer inferred that Mother was receiving direct support in some amount from Father during that time. The hearing officer thus awarded Father an abatement of $23,760, "half of the total amount due from July 6, 2001 until January 1, 2009." According to the Order, this amount was "meant to fairly represent the portion of support Father provided from July 6, 2001 until January 1, 2009, when he was in and out of the home, as well as, recognize that Mother was the primary caregiver of the children during this time period." No abatement was awarded for the period between April 15, 2001 and July 6, 2001, or for the period after January 1, 2009 until October 2011 when Father's child support obligation ceased pursuant to the dissolution decree.

With the benefit of counsel, Father timely filed a petition for judicial review of the Order to the Circuit Court of Cole County. Father argued that the amount of the awarded abatement was in error, and that Father was entitled to the full abatement he had requested. The petition for judicial review made no claim of error related to the use of an interpreter during the administrative hearing. In pre-trial briefing before the Circuit Court, Father raised for the first time the argument that the "hearing officer [did not] verify the interpreter's name or credentials," and that "nothing in the transcript or audio recording of the administrative hearing . . . indicates the interpreter has an interpretation certification." Father's brief did not raise a concern that the interpreter had not been sworn or address the sporadic use of the interpreter at the administrative hearing. At trial, the Circuit Court confirmed that "the record did not support a finding that there was a certified interpreter." At no point during trial was there any discussion about whether the interpreter had been sworn. Father's counsel did argue that the interpreter had not been used consistently throughout the hearing to translate the proceedings. Pressed by the trial court to identify how or whether issues involving the interpreter prejudiced Father, Father only generally argued that Father had not been given a full and fair opportunity to present his arguments for abatement. Father did not identify, however, any errors in translation made by the interpreter or any discussion during the administrative hearing that Father failed to understand.

The trial court affirmed the Order, noting that Father failed to establish that he did not obtain a fair trial without the services of a "certified interpreter," and that the

6

abatement calculated by the administrative hearing officer was supported by competent and substantial evidence on the record as a whole.

Father timely appeals to this Court.

## Standard of Review

"On appeal from the circuit court's review of an agency decision, this Court reviews the action of the agency, not the action of the circuit court." *State Bd. of Registration for the Healing Arts v. Trueblood*, 368 S.W.3d 259, 261 (Mo. App. W.D. 2012). "[W]e presume that the agency's decision is correct, and the burden to show otherwise is placed on the party challenging the decision." *Ringer v. Missouri Dept. of Health & Senior Services*, 306 S.W.3d 113, 114 (Mo. App. W.D. 2010).

We examine the decision to determine "'whether, considering the whole record, there is sufficient competent and substantial evidence to support [it]. This standard would not be met in the rare case where the [decision] is contrary to the overwhelming weight of the evidence.'" *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009) (quoting *Lagud v. Kansas City Bd. of Police Comm'rs*, 136 S.W.3d 786, 791 (Mo. banc 2004)). "Substantial evidence is evidence which has probative force on the issues, and from which the trier of fact can reasonably decide the case." *White v. St. Louis Teachers Union, Div. of Employment Sec.*, 217 S.W.3d 382, 388 (Mo. App. W.D. 2007). "It is the administrative tribunal's function to determine credibility of the witnesses." *Missouri Shelfco, Inc. v. Labor & Indus. Relations Comm'n*, 849 S.W.2d 245, 248 (Mo. App. W.D. 1993).

**Analysis**

Father raises two points on appeal.  First, Father argues that his due process rights were violated because "a language barrier prevented him from receiving a full and fair hearing."  Second, Father argues that the FSD's Order granting him less than the full abatement he sought was not supported by substantial evidence because "Father provided direct support during the arrearage accrual."

**Point One**

Father's first point relied on generally argues that because of a language barrier, Father was deprived of a full and fair hearing in violation of his right to due process.  In the argument portion of Father's Brief, Father specifically contends that in the record of the administrative hearing, "[t]here is no indication the interpreter was certified to conduct official interpretations, nor was the interpreter sworn in."  Father also specifically complains that use of the interpreter was sporadic during the administrative hearing.

Father's point relied on makes no reference to a claim of error associated with use of an interpreter at his administrative hearing, let alone to the specific concerns raised in the argument portion of his Brief.  Rather, Father's point relied on is defectively vague, as it fails to identify the administrative ruling or action challenged, and wherein and why the administrative hearing officer erred, as required by Rule 84.04(d)(1)(C)(2).  Father's point relied on preserves nothing for our review.  *Gossett v. Gossett*, 98 S.W.3d 899, 901 (Mo. App. W.D. 2003) (holding that point relied on which alleges error in a conclusory

8

manner without specifically identifying specific trial court error fails to comply with Rule 84.01(d)(1) and preserves nothing for appellate review).

Even if we could overlook the deficient nature of Father's first point relied on, Father's complaints about the interpreter face other preservation concerns. During the administrative hearing, Father never objected that the interpreter's certification was not established, that the interpreter was not sworn, or that the interpreter was not being consistently used to translate the proceedings. "The general rule is that a court should not set aside administrative actions unless the agency has been given a prior opportunity, on timely request by the complainant, to consider the point at issue." *Mills v. Fed. Soldiers Home*, 549 S.W.2d 862, 868 (Mo. banc 1977). "[A] litigant may not withhold his objections, await the outcome, and then complain that he was denied his rights if he does not approve the resulting decision." *Tate v. Department of Social Services*, 18 S.W.3d 3, 7 (Mo. App. E.D. 2000) (quoting *Brotherhood of Locomotive Engineers Intern. Union v. Union Pacific R. Co.*, 134 F.3d 1325, 1331 (8th Cir. 1998)). The fact that Father was appearing in the administrative proceeding *pro se* does not excuse his failure to raise his objections regarding the interpreter during the hearing. "Pro se litigants are held to the same standard as licensed attorneys" and "are entitled to no indulgence they would not have received if represented by counsel." *Portwood-Hurt v. Hurt*, 988 S.W.2d 613, 618 (Mo. App. W.D. 1999).

Moreover, though Father was represented by counsel when his petition for judicial review was filed, no complaint was raised in the petition regarding the use of the interpreter. "Circuit and appellate court review of administrative decisions is . . . limited

9

to matters raised in the petition for review." *Fitzgerald v. City of Maryland Heights*, 796 S.W.2d 52, 58 (Mo. App. E.D. 1990). Father's complaints about the interpreter are not preserved for our review.

Father did raise the issue of the interpreter's certification in pre-trial briefing filed with the Circuit Court, and raised the additional concern regarding the sporadic use of the interpreter during the hearing in oral argument before the Circuit Court. For the reasons explained above, these claims exceed the scope of Father's petition for judicial review and preserve nothing for our review.

Even if all or some of Father's complaints about the interpreter had been preserved for our review, Father's first point on appeal would still be without merit as Father has neither argued nor demonstrated prejudice. Father has not identified any portion of the administrative hearing that the interpreter failed to accurately translate, or any portion of the hearing that Father failed to understand. In fact, the audio recording of the hearing reveals that Father frequently and cogently responded to the hearing officer's questions of him without translation of those questions, and that Father made comments during the hearing that reflected an understanding of the proceedings that had transpired. Though Father expressed "confusion" about Mother's motives in pursuing collection of the child support arrearage, and about FSD procedures for accruing a child support obligation while enforcement of an order is "closed," this confusion was not related to a language barrier. Father identifies no evidence he was unable to introduce, and no argument he was unable to make by virtue of his alleged language barrier. Father has not met his

burden to establish that he suffered prejudice arising out of the use of an interpreter in his administrative hearing.[8]

Point one is denied.

## Point Two

Father's second point on appeal argues that the hearing officer's abatement of Father's child support arrearage was in error because substantial evidence supported finding that Father was entitled to an abatement of all support that accrued between January 1, 2001 and August 1, 2009. In support of this argument, Father emphasizes the evidence he admitted that established that he lived with Mother and the children during that period.[9]

Father's argument disregards our standard of review. We are to determine whether "considering the whole record, there is sufficient competent and substantial evidence to support" the hearing officer's decision with respect to the amount of abatement awarded. *Albanna*, 293 S.W.3d at 428. The burden to show that the administrative agency's

---

[8]Because Father's concerns regarding the use of an interpreter are not preserved, we need not address whether section 476.803, which requires interpreters to have certain credentials and to be sworn in a particular manner, applies to proceedings before an administrative agency. Even if the statute does not apply to administrative proceedings, Missouri has long treated an interpreter as a "witness." *See Kley v. Abell*, 483 S.W.2d 625, 628 (Mo. App. 1972) (holding that an interpreter is both an officer of the court and a witness). Pursuant to section 491.380, "[e]very person offered as a witness, before any testimony shall be given by him, shall be duly sworn." The same requirement applies to proceedings before administrative agencies pursuant to the Administrative Procedures Act, as section 536.070(1) provides that in any contested case "[o]ral evidence shall be taken only on oath or affirmation." Of course, the swearing of an interpreter generally anticipates an oath addressing both the interpreter's role as a witness and as an officer of the court. *See, e.g., State v. Isa*, 850 S.W.2d 876, 886-87 (Mo. banc 1993) (addressing section 540.150 which requires interpreters in grand jury proceedings to be administered an oath that the interpreter will correctly interpret all questions and all answers).

Though we need not determine whether section 476.803 applies to administrative agency proceedings, we are not condoning the haphazard use of the interpreter in this case, including the conceded failure to demonstrate that the interpreter was properly credentialed, the conceded failure to swear the interpreter as a witness, and the sporadic and confusing use of the interpreter to translate the proceedings. However, as we have noted, even had these deficiencies been preserved for our review, Father's failure to establish prejudice would have been fatal to a claim of error.

[9]As the party seeking abatement of his child support obligations, Father "bears the burden of proof on that claim." *Brown v. Brown*, 370 S.W.3d 684, 688 (Mo. App. W.D. 2012); section 452.340.

decision does not meet this standard is on the party challenging the decision. *Ringer*, 306 S.W.3d at 114. We defer to credibility determinations made by the administrative tribunal. *Missouri Shelfco, Inc.*, 849 S.W.2d at 248.

Here, the hearing officer found both Father's and Mother's testimony about the amount of time Father spent at home with Mother and the children during the time frame during which Father sought an abatement to be unreliable. The hearing officer found the FSD technician's testimony that Mother voluntarily closed child support enforcement proceedings for an eight year period to be reliable and reasonably inferred that Mother's action was motivated by the fact that she was receiving some direct support from Father during that time period. The hearing officer thus awarded Father an abatement for one-half of the support obligation otherwise due and owing during the time the DCSE child support order was closed and explained the rationale for this calculation in the Order. The hearing officer's determination is supported by competent and substantial evidence considering the whole record. Though Father's evidence might have supported a contrary determination by the hearing officer had that evidence been believed to the exclusion of all other evidence, that is not our standard of review.

Father's reliance on *Linford v. State, Dept. of Soc. Services, Div. of Child Support Enforcement*, 987 S.W.2d 507, 510 (Mo. App. E.D. 1999) is thus misplaced. *Linford* addressed whether a mother should receive past due child support for a time period in which a third party voluntarily cared for and supported the children. *Id*. at 509. Unlike the situation before us, the facts in *Linford* were undisputed, and credibility determinations were not required. *Id*. *Linford* is inapplicable.

12

The argument portion of Father's Brief further asserts that rehearing is necessary to permit Father to more fully inquire about why $17,437.12 of Father's total arrearage was reclassified by the FSD technician during the administrative hearing from "non-collectible" (as shown on the summary accompanying the FSD's Child Support Debt Computation Worksheet) to "collectible." This new claim of error is not preserved for our review both because it was never raised in Father's petition for judicial review, *Fitzgerald*, 796 S.W.2d at 58, and because it is not within the scope of Father's point relied on. *Burg v. Dampier*, 346 S.W.3d 343, 354 (Mo. App. W.D. 2011) (holding that "[a]rguments advanced in the brief but not raised in the point relied on are not preserved").

Even were the matter preserved for our review, Father's request for a rehearing would be denied. Father was not prevented from questioning the FSD technician about her testimony on the subject of reclassification at the time of the administrative hearing. His failure to do so is not tribunal error warranting appellate relief. Moreover, Father does not explain how the reclassification at the time of the hearing prejudiced him. The FSD technician explained during the hearing that although she could not determine from FSD's files why $17,437.12 of Father's total arrearage was shown on the summary sheet as "non-collectible," she reasonably believed that classification to be related FSD's award of a credit or abatement to Father against his child support obligation during the time enforcement of the DCSE child support order was closed at Mother's request. Of course, the Order afforded Father an abatement for the same reason and for the same period in the amount of $23,760, an amount in excess of the $17,437.12 credit reflected by FSD on

13

its summary sheet. Father's unpreserved claim of error fails to apprehend that Father is not entitled to two abatements for the same reason covering the same period of time.

Point two is denied.

## Conclusion

The trial court's judgment affirming the FSD's Order is affirmed.[10]

Cynthia L. Martin
Cynthia L. Martin, Judge

All concur.

---

[10]Though our review in this appeal is of the Order of the administrative agency and not the judgment of the Circuit Court on Father's petition for judicial review, "an appellate court [nonetheless] reverses, affirms, or otherwise acts upon the judgment of the trial court." *Bird v. Mo. Bd. of Architects*, 259 S.W.3d 516, 520 n. 7 (Mo. banc 2008).