UNION ELECTRIC CO.,
Plaintiff/Respondent,

City of Mexico, Plaintiff/Respondent,

v.

MEXICO PLASTIC CO.,
Defendant/Appellant.

No. 73197.

Missouri Court of Appeals,
Eastern District,
Northern Division.

July 31, 1998.

 

Margaret M. Mooney, St. Louis, for defendant/appellant.

Louis J. Leonatti, Randall P. Baker, Mexico, for plaintiff/respondent.

ROBERT E. CRIST, Senior Judge.

Union Electric (UE) filed suit against Mexico Plastic Co. (Mexico Plastic) to recover the value of business license taxes it paid to the City of Mexico (City) pursuant to city ordinance. UE pays the tax on its gross electric revenue unless certain exemptions apply. Following trial, the court entered judgment ordering Mexico Plastic to reimburse UE for the taxes it paid. Mexico Plastic appeals, raising two points on appeal.

On appeal, we will affirm the decision of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Paragon Group, Inc. v. Ampleman,* 878 S.W.2d 878, 880 (Mo.App. E.D.1994).

The pertinent facts are as follows. In 1957, City passed Ordinance No.1969, which imposed a business license tax for users of various utilities. An amendment to the ordinance established an exemption from the tax for users of an "industrial power rate." UE provided an exemption to its customers who purchased their own transformer. As a consequence of the exemption, certain customers of UE did not pay the tax and therefore, UE did not pay a tax to City on their gross receipts.

In the mid–1980s, the City suffered an economic downward spiral, with several businesses closing and high unemployment. City began to formulate an economic development plan which included financial incentives to attract business and industry to the region. In April of 1988, City hired a new City Manager, Dan Parrott, whose primary mission was economic development.

In May and June of 1989, the City Council expressed concern to Parrot that the utility exemption for the business license tax was not being applied uniformly. Parrott was also concerned that the City had no set prac-

tice for knowing who qualified for the exemption. In December 1989, City adopted Ordinance No. 3441(a) repealing and amending the prior ordinance and imposing a tax on "[e]very person, firm or corporation engaged in the business of selling and distributing natural gas, electricity, or water for commercial, business, manufacturing, industrial, or for any other purposes in the city...." The 1989 ordinance further outlined several businesses that would be exempt from the tax, including Mexico Plastic, until December 31, 1992. Other business exemptions were also provided by directly referring to the businesses by name.

Due to concern about the constitutionality of the 1989 ordinance, the City amended the ordinance in 1990 and deleted any reference to an exemption for specific businesses. In its place, City established two windows by which industries would be eligible for either a ten-year exemption or a twenty-five year exemption. Under the ten-year exemption class, the "gross receipts for electrical services for those customers engaged in manufacturing before January 1, 1987, shall be exempt for one 10–year period." Following the ten-year period, the tax would be phased in over three years. Under the twenty-five year class, the ordinance provides:

> To encourage continued expansion of the local economy, those manufacturers who have located their new manufacturing businesses or expanded their local manufacturing businesses within the City of Mexico from the period of January 1, 1987 to December 1, 1991, may apply to the City Manager for a 25–year exemption, which requests shall be reported by the City Manager to the City Council and granted at the City Council's discretion if the following criteria are met:

> A. The manufacturer must fall within the definition of manufacturing stated in Subsection 3 except that the electrical usage requirement of the manufacturer must reasonably be expected to meet the electrical usage requirement set forth in Subsection 3 within three years of the issuance of an occupancy permit for the new or expanded manufacturing facility;

> B. Those manufacturers meeting the requirements who are granted an exemption waiver must apply for exempt status within three years of the issuance of an occupancy permit. The reportable taxable gross receipts from those manufacturers granted an exemption waiver shall be subject to the rates provided for in Subsection 2 until exemption status is granted;

> C. The reportable taxable gross receipts for each manufacturer shall not have been previously exempt from the tax set forth in this Article. For example, if a manufacturer was previously exempt, and then expands its facilities, it shall not be entitled to an additional exemption. It is the intention of the Council that a manufacturer shall have only one lifetime exemption.

Beginning in 1992, new manufacturing businesses in City meeting certain requirements could also apply for a ten-year exemption. In July of 1990, City notified UE that Mexico Plastic had a ten-year exemption which would expire on December 31, 1992. This date was based on the belief that Mexico Plastic had first received an exemption sometime in early 1983. In July of 1991, the president of Mexico Plastic, Carl Fuemmeler, sent a letter to City indicating his awareness that UE would begin to charge Mexico Plastic the license tax in January of 1993. He requested that the City reevaluate Mexico Plastic's position and grant it a 25–year exemption. He believed Mexico Plastic should be entitled to the exemption because it had undertaken several expansions between 1987 and 1990 and created many jobs during that time period. City denied Mexico Plastic's request for a 25–year exemption. City only granted one 25–year exemption, although other businesses may have qualified for it. City granted the exemption to Optec D.D., a Japanese manufacturer of copper magnet wire, as an incentive for it to open its business in City.

Beginning in January of 1993, UE began to pay City the business license tax on its gross receipts from Mexico Plastic because the tax is assessed against UE's gross electrical revenue. Pursuant to the Public Service Commission's ("PSC") authorization, UE

began to pass the tax onto Mexico Plastic by billing it for the amount. The tax was listed separately on each bill UE sent to Mexico Plastic. Mexico Plastic refused to pay the tax and withheld that amount from its payment each month. For each month Mexico Plastic refused to pay the tax, UE also assessed a late fee charge pursuant to PSC authorization. UE continued to pay the tax to City.

On August 1, 1996, UE filed suit against Mexico Plastic to collect the unpaid sums resulting from the license tax imposed on Mexico Plastic's gross electrical receipts and paid by UE to City. On October 10, 1996, Mexico Plastic filed a counterclaim for a declaratory judgment alleging City's ordinance was unconstitutional pursuant to the Missouri Constitution because it was not uniform taxation (Article X, Sec. 3), it constituted special legislation (Art. III, Sec.40(30)) and it was the use of public funds for a private purpose (Art. VI, Sec.25). On October 21, 1996, Mexico Plastic filed a third party petition against City seeking a declaratory judgment regarding the constitutionality of the ordinance in question. On that same date, Mexico Plastic amended its counterclaim against UE to include a claim for money had and received. Mexico sought to recover amounts paid to UE that UE credited to the amount it owed for the business license taxes. On March 21, 1997, Mexico Plastic advanced the amount owed to UE and filed a written notice of protest.

On May 15, 1997, City's motion to dismiss the third party petition was granted. However, the trial court, on its own motion, added City as a party plaintiff. On June 11, 1997, the trial was held. Prior to the proceedings, the parties entered into an agreement stipulating that Mexico Plastic had paid under protest the City's gross receipts tax and the Union Electric Company late charges at issue in this litigation in the total amount of $38,462.95 through April 24, 1997. They also stipulated that City had received $34,544.39 in payment of the tax from UE for electrical service provided through April 24, 1997.

On July 22, 1997, the trial court entered judgment in favor of UE and found the ordinance to be constitutional. The court entered judgment in the amount of $42,120.59 together with costs. Mexico Plastic appeals. We affirm.

■ Mexico Plastic first argues that City's denial of its application for a 25–year exemption from the business license tax violated the Missouri Constitutional requirement that all taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Mo. Const. Art. X, section 3. Specifically, Mexico Plastic argues there was no reasonable basis for exempting Optec D.D., another manufacturing concern in Mexico, but not it.

■ A law assessing a tax against one class while exempting others must be based on a difference between the two classes that is reasonably related to the purpose of the law. *Pipe Fabricators, Inc. v. Director of Revenue*, 654 S.W.2d 74, 77 (Mo. banc 1983). Absolute uniformity of taxation is not required. *Id.* In the present case, Optec D.D. received the 25–year exemption because it commenced business operations in City in between January 1, 1987 and December 1, 1991. This classification rewarded new and newly expanded businesses. The purpose of the ordinance was to encourage expansion of the local economy. There was extensive testimony about City's desire to quickly attract businesses to stem the steady economic decline in the area. A time-sensitive economic incentive like the one before the court attempts to stimulate rapid growth by tying economic development to tax relief. The classification established by City was reasonably related to the purpose of its ordinance. *See Schnorbus v. Director of Revenue*, 790 S.W.2d 241, 243 (Mo.1990). Point denied.

■ Second, Mexico Plastic claims the trial court erred in failing to sever subsection 8C from the rest of the ordinance because its provision that previously exempted companies cannot qualify for the 25–year exemption violates the Missouri Constitutional ban on special legislation.

The general assembly shall not pass any local or special law "where a general law can be made applicable". Mo. Const. Art. III, section 40(30). City's ordinance provides "the reportable taxable gross receipts for

each manufacturer (applying for the 25–year exemption) shall not have been previously exempt from the tax," thereby excluding Mexico Plastic from eligibility for a 25–year exemption because it had enjoyed an exemption since 1983.

Whether a legislative enactment is facially special as opposed to general depends on whether the classification it makes is open-ended or not. *Tillis v. City of Branson*, 945 S.W.2d 447, 449 (Mo. banc 1997). Classifications based upon factors subject to change may be open-ended and do not implicate the constitutional prohibition. *Id.* Classifications based upon historical facts and similar immutable factors are closed-ended and, therefore, facially special laws. *Id.* The unconstitutionality of such closed-ended classifications is presumed. *Id; Harris v. Missouri Gaming Commission*, 869 S.W.2d 58, 65 (Mo. banc 1994). The party defending the facially special law must then demonstrate a substantial justification for the closed-ended classification lest the law be struck down as unconstitutional. *Harris*, 869 S.W.2d at 65.

Mexico Plastic contends that City's law limiting all manufacturers to one lifetime exemption from the business license tax created a closed-ended class of organizations eligible to apply for the 25–year exemption. Even assuming the class is closed-ended, the record clearly demonstrates a justification for such a class. The trial court noted in its judgment that the purpose of the ordinance granting exemptions from the business license tax was both to encourage manufacturers to locate in City and to generally benefit the community at large. It was, therefore, important to balance the economic enticements offered to prospective business with sound municipal revenue.

Revenue from the business license tax constituted nearly fifty percent of City's general fund budget and about fourteen percent of City's overall budget at the time the 1990 ordinance was passed. City had to make reasonable limitations like the one lifetime exemption rule to adequately serve the purposes of its ordinance. Point denied.

We need not take up the procedural argument raised by City in Point III. City contends that Mexico Plastic was required under section 139.031, RSMo 1994, to have paid the disputed taxes under protest to be entitled to a refund. *Lett v. City of St. Louis*, 948 S.W.2d 614, 621 (Mo.App. E.D.1996).

Judgment affirmed.

RHODES RUSSELL, P.J., and CRANDALL, J., concur.