**DEPARTMENT OF SOCIAL SERVICES, DIVISION OF MEDICAL SERVICES, Appellant,**

v.

**LITTLE HILLS HEALTHCARE, L.L.C., d/b/a Centerpointe Hospital, Respondent.**

No. SC 88430.

Supreme Court of Missouri, En Banc.

Oct. 30, 2007.

Jeremiah W. (Jay) Nixon, Atty. gen., David P. Hart, Asst. Atty. Gen., Jefferson City, MO, for Appellant.

Joanna W. Owen, Daniel R. Schramm, St. Louis, MO, for Respondent.

Harvey M. Tettlebaum, Robert L. Hess II, Rochelle L. Reeves, Jefferson City, for Amicus Curiae Missouri Health care Association.

MARY R. RUSSELL, Judge.

The Department of Social Services, Division of Medical Services ("DMS"),[1] seeks review of the decision of the Administrative Hearing Commission granting an in-creased direct Medicaid payment to Little Hills Healthcare, d/b/a Centerpointe Hospital ("Hospital"),[2] for the state fiscal year ("SFY") 2004. This Court has jurisdiction pursuant to Mo. CONST. art. V sec. 10, as the case was taken on transfer after opinion by the court of appeals. The Commission's decision is not unreasonable and is, therefore, affirmed.

## A. Background

The issue in this case is whether DMS is required to promulgate a rule outlining how it estimates the number of Medicaid days it utilizes in its calculation of direct Medicaid payments for Medicaid service providers such as Hospital.[3]

Medicaid service providers receive direct Medicaid payments in order to reimburse them prospectively for projected estimated expenses. *See* 13 CSR 70–15.010(15). "[E]stimated Medicaid patient days for the current SFY" are a component in calculating direct Medicaid payments. 13 CSR 70–15.010(15)(B). Direct Medicaid payments are based on "estimated Medicaid days" because actual days are indeterminable until after the SFY is completed. Nothing in DMS's regulations sets forth a precise method used in calculating "estimated Medicaid days." DMS annually considers three components when calculating "estimated Medicaid days": (1) estimated "fee for service days," which are days paid directly by DMS; (2) days paid by managed care health plans; and (3) out-of-state days paid by another state for non-Missouri patients. DMS has no regu-

---

1. DMS is the state agency that administers Medicaid reimbursement payments to Missouri Medicaid service providers.

2. Hospital is a psychiatric hospital that provides Medicaid-funded services to Missouri children.

3. *See* section 208.153.1, RSMo 2000 (providing that DMS "shall by rule and regulation define the reasonable costs, manner, extent, quality, charges and fees" for medical assistance services). All further statutory references are to RSMo 2000, unless otherwise indicated.

lations in place, however, for its calculations of each of these components.

DMS has been inconsistent in its method for determining "estimated Medicaid days" from year to year,[4] but in any given SFY it applies the same calculations to all 140 Medicaid-provider hospitals in Missouri. Each provider submits an annual cost report to DMS that is utilized in estimating components for DMS's "estimated Medicaid days" calculation. *See* 13 CSR 70–15.010(5)(A). A DMS assistant deputy director in the reimbursement unit annually determines the time period of days used for the "estimated Medicaid days" calculation. This DMS official testified that her determinations were made after consulting with the Missouri Hospital Association and DMS's chief financial officer.

Providers are issued two notices per SFY that inform them of DMS's Medicaid-related calculations and payments. DMS, however, does not provide hospitals any notice of changes in its methodologies for calculating "estimated Medicaid days," nor does it publish its computations.

From SFY 1991 to late SFY 2003, DMS used a provider's past "fee for service days" data in order to determine the provider's estimated "fee for service days" for use in the current year's "estimated Medicaid days" calculation. Before sending out the second notice for SFY 2003, however, DMS altered its "estimated Medicaid days" calculation to consider actual "fee for service" days from the first two-thirds of the current SFY.[5] Under the altered SFY 2003 calculation method, Hospital's estimated Medicaid days were reduced and its direct Medicaid payments decreased.[6]

In SFY 2004, DMS again modified its calculations for determining "estimated Medicaid days." The SFY 2004 formula considered actual "fee for service" days from SFY 2003,[7] which resulted in an "estimated Medicaid days" calculation of 2,372 days for Hospital for SFY 2004. This number of days was the same in both of Hospital's notices from DMS in SFY 2004.

Had DMS not altered its "estimated Medicaid days" calculation from late SFY 2003 to SFY 2004, Hospital would have been credited for 4,802 days and would have received $1,803,984 more for direct Medicaid payments.

Hospital sued DMS after receiving its second Medicaid calculations notice for SFY 2004. Hospital challenged DMS's unregulated methodology for calculating "estimated Medicaid days" for each SFY. Hospital alleged that DMS's SFY 2004 decision was in error because DMS's method for calculating "estimated Medicaid days" failed to comply with rulemaking procedures in the Missouri Administrative Procedure Act (MAPA).[8]

After a hearing, the Commission found in Hospital's favor and determined that DMS's decision was void because it had failed to promulgate a rule for the estima-

---

4. The Commission included an appendix to its decision that highlighted that DMS's methods for calculating "estimated Medicaid days" varied yearly between SFY 1999 and SFY 2005.

5. The altered calculation considered actual "fee for service" days for SFY 2003, instead of relying on past "fee for service" days data.

6. DMS sought and was paid a refunded amount by Hospital due to Hospital's reduced days. Not all providers were similarly impacted—some were credited for more estimated days and received increased payments.

7. This number was markedly different than Hospital's actual SFY 2004 numbers because Hospital had reduced its SFY 2003 operations.

8. Sections 536.010 to 536.160, RSMo 2000, and, where amended, RSMo Supp.2006.

tion of Medicaid days for purposes of determining direct Medicaid payments. The Commission determined that Hospital was entitled to additional reimbursement of $1,803,984, plus interest, for Medicaid services it provided in SFY 2004. DMS seeks review of the Commission's decision.

### B. Standard of Review

■ On review of the Commission's decision, this Court determines whether competent and substantial evidence supports the Commission's decision, whether the decision is arbitrary, unreasonable or capricious, and whether the Commission abused its discretion. *Psychcare Mgmt., Inc. v. DMS*, 980 S.W.2d 311, 312 (Mo. banc 1998). Questions of law are reviewed *de novo. Id.*

### C. The Commission's Jurisdiction

■ DMS first argues that Hospital failed to timely appeal the first notice of the "estimated Medicaid days" it calculated for Hospital for SFY 2004. Section 208.156.8 provides 30 days for appealing DMS's decision to the Commission.

DMS mailed its first notice for SFY 2004 to Hospital in September 2003, but Hospital denied receiving it. Hospital did not appeal the "estimated Medicaid days" calculation until after it received the second notice in June 2004. DMS contends that Hospital's failure to timely appeal the first notice left the Commission without jurisdiction to hear Hospital's case.

The Commission found that Hospital's appeal was timely because it was within 30 days of its receipt of the second notice in June 2004, which expressly stated that it could be appealed as a final decision of DMS. In April 2004, Hospital received a letter from DMS indicating that DMS was "still in the process of finalizing SFY 2004 projected days." The Commission determined that the first notice for SFY 2004 could not be treated as Hospital's final notice for that year, as the second notice was to be received near the conclusion of the SFY and no SFY figures were final until after the second notice.

The Commission's decision allowing Hospital's appeal was not arbitrary, capricious, unreasonable or an abuse of its discretion. As such, DMS's argument that there is no jurisdiction is unpersuasive.

### D. Determining "Estimated Medicaid Days"

The central issue in this appeal is whether the Commission correctly determined that DMS is required to promulgate an administrative rule for determining "estimated Medicaid days" used in calculating Medicaid providers' direct Medicaid payments.

■ DMS argues that its "estimated Medicaid days" calculations do not fit the definition of an administrative rule. Hospital argues that the rulemaking process is required to establish DMS's method for calculating "estimated Medicaid days" so that Medicaid providers have notice about and input into DMS's calculation formulas.[9]

#### 1. Rulemaking

■ Whether an agency decision should be promulgated as a rule is a determination that is guided by section 536.010(6), RSMo Supp.2006.[10] This section defines

9. The purpose of the notice and comment procedures outlined in Missouri's rulemaking requirements is to provide information to the agency through statements of proponents and opponents to the proposed rule. *NME Hospi-*

*tals, Inc. v. DMS*, 850 S.W.2d 71, 74 (Mo. banc 1993).

10. The definition of "rule" was formerly in section 536.010(4), RSMo 2000, and was later

an administrative "rule" and provides, in relevant part:

> "**Rule**" means each agency statement of *general applicability* that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency. The term includes the amendment or repeal of an existing rule, but does not include:
>
> (a) A statement concerning only the internal management of an agency and which does not substantially affect the legal rights of, or procedures available to, the public or any segment thereof;
>
> (b) A declaratory ruling issued pursuant to section 536.050, or an interpretation issued by an agency with respect to a specific set of facts and intended to apply only to that specific set of facts;
>
> (c) An intergovernmental, interagency, or intraagency memorandum, directive, manual or other communication which does not substantially affect the legal rights of, or procedures available to, the public or any segment thereof;
>
> . . . .

Section 536.010(6) (emphasis added).

■ Any agency announcement of policy or interpretation of law that has future effect and acts on unnamed and unspecified facts is a "rule." *NME Hospitals, Inc. v. Department of Social Servs,* 850 S.W.2d 71, 74 (Mo. banc 1993). In *NME,* this Court found that a DMS-made, Medicaid-related reimbursement standard of "general applicability" requires promulgation of a rule under Missouri administrative law. *Id.*

But this Court has explained:

> Not every generally applicable statement or "announcement" of intent by a state agency is a rule. Implicit in the concept of the word "rule" is that the agency declaration has a potential, however slight, of impacting the substantive or procedural rights of some member of the public. Rulemaking, by its nature, involves an agency statement that affects the rights of individuals in the abstract.

*Baugus v. Director of Revenue,* 878 S.W.2d 39, 42 (Mo. banc 1994).

DMS argues that its "estimated Medicaid days" calculations are merely agency decisions applying an existing regulation and do not meet the definition of a "rule" for the reasons that follow.

### a. "General Applicability"

DMS first asserts that its calculations are not subject to rulemaking and do not meet the definition of a rule because they are not standards of "general applicability." DMS argues that the estimated days calculations relate to specific facts for specific providers.

In each SFY, DMS applies one method for calculating "estimated Medicaid days" to Hospital and 139 other similar Medicaid-participating providers. Application of the proposed standard to all hospitals in Missouri is not required to raise the standard to one of "general applicability." *NME,* 850 S.W.2d at 74. It is enough that the standard applies to all providers participating in the Medicaid program. *Id.* Contrary to DMS's assertions, its "estimated Medicaid days" calculation does not relate only to a specific set of facts relating to a specific provider and can be considered a standard of "general applicability" for rulemaking purposes.

### b. Future Effect

DMS also argues that its "estimated Medicaid days" calculations are excepted

---

renumbered and now is found in subdivision (6), but there has been no change in the definition. All further citations to this statute refer to the most recent version.

from rulemaking because they do not have future effect. This argument, however, is also unpersuasive.

DMS determines its "estimated Medicaid days" calculation method at the start of a SFY and then applies it as that SFY proceeds. DMS's choice to annually update or change its calculation methods does not change the fact that its methods could apply indefinitely in the future.[11]

#### c. Right to Reimbursement

DMS next contends that its "estimated Medicaid days" calculation does not fall under rulemaking because Medicaid providers lack standing and have no vested right to prospective Medicaid reimbursements.

Statutory law and DMS's regulations, however, permit Hospital to challenge DMS's calculation of "estimated Medicaid days." Section 208.152.1, RSMo Supp. 2006, and DMS regulations state that Medicaid providers should be reimbursed for "the reasonable cost of the care" they provide. Direct Medicaid payments are designed to reimburse reasonable costs for providing care during the SFY. DMS's arguments that Hospital lacks standing because it has no protected rights at issue are misplaced. Hospital is entitled to seek reasonable reimbursement.

#### d. Sufficiency Under State and Federal Law

DMS also argues that "estimated Medicaid days" calculations do not require promulgation of a rule because the federal government has "approved Missouri's Medicaid State Plan without the estimation process codified in the Plan." It further contends that support for its arguments

are shown because 13 CSR 70–15.010(15), governing direct Medicaid payments, was approved by the General Assembly's Joint Committee on Administrative Rules (JCAR) without demand for detail about how DMS would estimate days.

Notwithstanding the support given to DMS by the federal government and the JCAR, DMS's responsibility to comply with rulemaking procedures under the MAPA is not alleviated if its decision-making falls under the definition of "rule" as articulated in section 536.010(6).

#### 2. The Commission Did Not Err

Having found unpersuasive DMS's arguments that its "estimated Medicaid days" calculation methods need not be promulgated as a rule, this Court finds no error in the Commission's decision declaring that DMS should have promulgated a rule.

#### E. Effect of Failure to Promulgate a Rule

 Promulgation of a rule requires compliance with the rulemaking procedures specified in section 536.021, RSMo Supp.2006, and a failure to promulgate a rule as required voids the decision that should have been properly promulgated as a rule. See NME, 850 S.W.2d at 74–75 (an agency decision that should have been promulgated as a rule, but was not promulgated according to the rulemaking procedures set out in MAPA, will be invalidated).

Consistent with this standard, the Commission invalidated DMS's "estimated Medicaid days" calculation for Hospital for SFY 2004 because it found that DMS failed to promulgate a rule to explain its method for calculating "estimated Medic-

---

11. DMS complains that the slow pace of the rulemaking process might inhibit necessary changes. Nothing in the rulemaking process prevents DMS from altering its "estimated

Medicaid days" calculation upon its own choosing. Emergency rulemaking procedures could be utilized to expedite changes to the calculation methods as needed.

aid days." The Commission refused to defer to DMS's calculations and rendered its own accounting to determine Hospital's SFY 2004 reimbursement entitlement. The Commission adopted Hospital's proposed calculation for its SFY 2004 "estimated Medicaid days," which resulted in it finding that Hospital had 4,802 estimated days and was owed $1,803,984 more than DMS had calculated. It was persuaded by Hospital's proposed remedy because it used the most current available data.

DMS urges this Court to find that the Commission erred in awarding Hospital additional monies because it should have deferred to DMS's calculations. This Court defers to the Commission's decision so long as it is supported by competent and substantial evidence and is not arbitrary, unreasonable or capricious, or an abuse of discretion. *Psychcare*, 980 S.W.2d at 312.

The legislature's intent was for the Commission to render the agency's decision. *J.C. Nichols Co. v. Director of Revenue*, 796 S.W.2d 16, 20 (Mo. banc 1990). "[T]he Commission is simply a hearing officer who exercises the same role as any administrative hearing officer authorized to hear contested cases within an agency.... It simply determines, on evidence heard, the administrative decision of the agency involved." *Id.* (citing *Geriatric Nursing Facility, Inc. v. Dep't of Soc. Servs.*, 693 S.W.2d 206, 209 (Mo.App.1985) (a Medicaid-reimbursement case)).

In rendering the administrative decision in this case, the Commission utilized the estimation method adopted by DMS in the prior fiscal year and considered the most current available data. Under the circumstances, this Court cannot find that the Commission's decision was unreasonable.

### F. Conclusion

Finding no error, the Commission's decision is affirmed.

LAURA DENVIR STITH, C.J., PRICE, TEITELMAN, LIMBAUGH and WOLFF, JJ., and ROBB, Sp. J. concur. BRECKENRIDGE, J. not participating.