**BOARD OF EDUCATION OF the CITY OF ST. LOUIS, et al., Appellants,**

v.

**The MISSOURI STATE BOARD OF EDUCATION, et al., Respondents.**

No. SC 89139.

Supreme Court of Missouri, En Banc.

Dec. 16, 2008.

Kenneth C. Brostron, Dirk DeYong, Christin M. Bujnak, Lashly & Baer, P.C., St. Louis, for Appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Paul C. Wilson, Dustin Allison, Daniel Y. Hall, Office of the Atty. Gen., Jefferson City, John R. Munich, Jane Dueker, John R. Phillips, Stinson, Morrison, Hecker, LLP, St. Louis, Charles W. Hatfield, Stinson, Morrison, Hecker, LLP, Jefferson City, George O. Suggs, Schuchat, Cook & Werner, St. Louis, for Respondents.

PATRICIA BRECKENRIDGE, Judge.

The Board of Education of the City of St. Louis, certain elected members of that board, and the board members' children [1] appeal from the circuit court's judgment in favor of the Missouri State Board of Education, the commissioner of education, and the department of elementary and secondary education (collectively the "state board"). The judgment was entered against the city board on its challenges to the St. Louis public school district's loss of accreditation and the transfer of authority from the city board to the special administrative board. The judgment is affirmed.

## I. Factual and Procedural Background

In 1998, the Missouri legislature passed SB 781 as one component of settling a long-running federal desegregation lawsuit regarding the City of St. Louis public schools. One element of SB 781 was the creation of a Transitional School District (TSD). Section 162.1100, RSMo Supp. 2007,[2] created the TSD as a mechanism for handling the transition from the control and jurisdiction of federal court orders to control by the City of St. Louis. The statute further provides that if the St. Louis public school district loses its accreditation after control is returned to the city board, general authority over the school district transfers back to the TSD. *See* section 162.1100.

Since 1994, the St. Louis public school district's performance had been at or below minimally acceptable levels. In July

---

1. Appellants include the Board of Education of the City of St. Louis; William Purdy, Peters Down, David Jackson, Jr., Donna Jones, and Katherine Wessling, all of whom are elected members to the board of education; and their children. Appellants will be referred to collectively as the "city board."

2. All statutory references are to RSMo Supp. 2007 unless otherwise noted.

of 2006, after the resignation of the St. Louis public schools' superintendent, the commissioner of education appointed an advisory committee to advise him, the state board, and the community regarding issues confronting the St. Louis public school district. The advisory committee was charged with (1) analyzing the school district's performance; (2) reviewing the 1999 desegregation settlement agreement, governance of the school district, and accreditation statutes; (3) clarifying the financial condition of the school district; (4) identifying the primary concerns of parents, community residents, and teachers concerning the governance and operations of the school district; and (5) analyzing state law concerning the state of Missouri's involvement with the school district. The advisory committee issued a final report on December 17, 2006.

On January 11, 2007, the state board reviewed the final report from the advisory committee but took no action. At a February 15, 2007, meeting, the state board acted on the advisory committee's recommendation and re-established the TSD, pursuant to section 162.1100.

At a March 22, 2007, meeting, the state board considered the issue of the St. Louis public school district's accreditation. In addition to the advisory committee's report, the state board reviewed information on the St. Louis public school district's financial status, accreditation history, the school district's performance for the school years 1998–99 through 2005–06, the school district's annual performance reports, the Department of Elementary and Secondary Education's (DESE) evaluation of the school district and whether it met certain criteria, and all data relied on by DESE in making its determinations. Along with DESE's evaluation was its recommendation that the state board unaccredit the school district. Following receipt of the aforementioned information, the state board decided that the St. Louis public school district should be unaccredited, but stayed the effective date of its determination until June 15, 2007.

In response, the city board filed a declaratory judgment suit challenging the validity of the state board's decision to unaccredit the St. Louis public school district and the constitutionality of statutes governing the consequences of that decision. The city board also filed a motion for a temporary restraining order, seeking to restrain the state board from giving effect to its decision and extending the provisional accreditation of the St. Louis public school district. The circuit court overruled the motion for a temporary restraining order. Thus, the St. Louis public school district lost its accreditation on June 15, 2007, and the special administrative board took control pursuant to section 162.621, RSMo 2000,[3] and section 162.1100.

The city board filed an amended petition with 29 counts. After a bench trial, the court entered judgment for the state board, dated January 23, 2008, addressing each count and finding them all to lack merit.

On appeal from that judgment, the city board raises six points of error. First, the city board claims that the reestablishment of the TSD and appointment of the special administrative board violated voters' rights under the Missouri and United States Constitutions. Second, it alleges section 162.1100 violates the elected board members' due process rights under the Missouri and United States Constitutions and, third, that section 162.1100 violates the Missouri Constitution's prohibition against special laws. Fourth, the city board ar-

3. All references to section 162.621 are to RSMo 2000.

gues the state board acted arbitrarily and capriciously in deciding that the St. Louis public school district should lose accreditation in that: the state board relied on factors beyond those articulated in the standards of the code of state regulations, the state board based its decision on an unpublished rule, the Missouri School Improvement Program (MSIP) standards are too vague, and financial performance and stability are improper considerations for the state board. Fifth, it alleges its claim must be reviewed under chapter 536 as an "uncontested case" and, therefore, this Court's decision in *Department of Social Services, Div. of Medical Services v. Little Hills Healthcare, L.L.C.*, applies to the case at bar and controls the effects of failure to properly promulgate a rule. 236 S.W.3d 637, 643 (Mo. banc 2007) (addressing the effect of an agency's failure to promulgate a rule). Finally, the city board asserts that section 162.1100 transferred only those powers in effect before August 28, 1998, and, therefore, the city board retains numerous powers even after control is transferred to the special administrative board.

Because the city board challenges the validity of Missouri statutes, exclusive appellate jurisdiction rests in this Court. Mo. Const. art. V, section 3.

## II. Standard of Review

In this court-tried case, the standard of review is that of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). This Court will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence,

it erroneously declares the law, or it erroneously applies the law. *Id.* at 32. If the facts of a case are contested, then this Court defers to the trial court's determinations regarding those facts. *Fick v. Director of Revenue, State of Missouri*, 240 S.W.3d 688, 690 (Mo. banc 2007) (quoting *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002)). If the facts are not contested, then the issue is legal and there is no finding of fact to which to defer. *Id.*

When considering the legal issue of the constitutionality of a statute, this question of law is to be reviewed *de novo*. *City of Arnold v. Tourkakis*, 249 S.W.3d 202, 204 (Mo. banc 2008). "A statute is presumed to be constitutional and will not be invalidated unless it 'clearly and undoubtedly' violates some constitutional provision and 'palpably affronts fundamental law embodied in the constitution.'" *Board of Educ. of City of St. Louis v. State*, 47 S.W.3d 366, 368–69 (Mo. banc 2001) (internal citations omitted).

## III. No Violation of Voters' Rights

The city board's first claim is that section 162.1100 is unconstitutional because it violates the voting rights of St. Louis voters.[4] Voting is a fundamental right under both the United States and Missouri constitutions. *Weinschenk v. State*, 203 S.W.3d 201, 211 (2006). The city board, however, does not assert that the statute burdens the ability to cast votes. Instead, it argues that the legislature's transfer of power from an elected board to an appointed board amounts to a post-hoc nullification of votes cast in favor of the city board's members.

4. Section 162.1100.3 states:
In the event that the school district loses its accreditation, upon the appointment of a chief executive officer, any powers granted to any existing school board in a city not within a county on or before August 28, 1998, shall be vested with the special administrative board of the transitional school district containing such school district so long as the transitional school district exists, except as otherwise provided in section 162.621.

The city board asserts that this is an issue of first impression in Missouri and hinges its argument on an analysis conducted by the Illinois Supreme Court in *Tully v. Edgar*, 171 Ill.2d 297, 215 Ill.Dec. 646, 664 N.E.2d 43 (1996). In *Tully*, the Illinois Supreme Court considered the constitutionality of a statute that changed the University of Illinois' board of trustees from an elected position to an appointed office. *Id.* at 45, 215 Ill.Dec. at 648. In addition to modifying the nature of the office itself, the act also provided that the currently elected trustees' positions would terminate prior to the expiration of their six-year terms. *Id.* at 46, 215 Ill.Dec. at 649. The court held that the act effectively nullified the votes cast in favor of current trustees to hold the office for which they were elected. *Id.* at 48–49, 215 Ill. Dec. at 651–52.

Even if *Tully* were controlling, which it is not, the analysis conducted in *Tully* is inapplicable to circumstances of this case. Section 162.1100 and section 162.621 defined the powers of the city board and provided for the transfer of powers to an appointed board upon the district's loss of accreditation, prior to the city board members' election to office. In fact, the Illinois Supreme Court distinguished *Tully* on this basis from a case more akin to the circumstances of this case. In *East St. Louis Federation of Teachers v. East St. Louis School District No. 189 Financial Oversight Panel*, the superintendent and board of education for East St. Louis challenged the constitutionality of a statute that authorized a financial oversight panel to remove school board members from office for failure to follow a valid order of the panel. 178 Ill.2d 399, 227 Ill.Dec. 568, 573, 687 N.E.2d 1050, 1055 (1997). Relying on *Tully*, they argued that the statute infringed on the right to vote because it allowed the state to remove elected officials mid-term. *Id.* at 1059, 227 Ill.Dec. at 577.

The Illinois Supreme Court disagreed, holding that a crucial distinction between *Tully* and *East St. Louis* was that, in *Tully*, the statute removing trustees from office was enacted *after* the trustees were elected. *Id.* at 1060, 227 Ill.Dec. at 578. The statute allowing for the removal of board members in *East St. Louis*, on the other hand, was in effect before the current school board members were elected. *Id.* The voters elected persons to positions that, by definition, could be removed from office for failing to obey a panel order. *Id.*

Here, section 162.1100 and section 162.621 were effective before any of the city board members were elected. The city board's powers, by definition, were subject to the provision that, if the school district loses its accreditation, most of its powers are transferred to an appointed board. Section 162.621.2. Even if the reduced powers could be considered a *de facto* removal from office, because the powers of the office were limited prior to the board members' elections, the limitation of the city board's powers by operation of statute does not amount to a post-hoc nullification of the right to vote.

The city board fails to demonstrate that section 162.1100 infringes on the fundamental right to vote.

## IV. No Procedural Due Process Violation

In its second point, the city board claims that it was denied procedural due process because the members of the city board effectively have been removed from office without being provided adequate notice or an opportunity to be heard. In determining whether the city board members were denied procedural due process, this Court must ascertain whether the city board members have been deprived of a property or liberty interest

under the United States or Missouri constitutions. *Belton v. Board of Police Comm'rs of Kansas City*, 708 S.W.2d 131, 136 (Mo. banc 1986). If this Court finds that a property or liberty interest has been infringed upon, it then determines whether the procedures followed met constitutional requirements. *Id.*

The city board members claim, as individuals, that they have a constitutionally protected property interest in their public office. But, just as the members' terms of service are found in chapter 162, *see* section 162.601, this same statutory chapter clearly requires that, if the school district loses its accreditation, most of the city board's powers will be vested in the special administrative board of the TSD. Section 162.621.2. The city board members cannot rely on the term of office prescribed by chapter 162 but disregard the limitations placed on this office by the same chapter.

Because there has been no infringement of the board members' constitutionally protected property interests, if any exist, this Court need not consider the sufficiency of the process given them. There is no violation of the city board's procedural due process rights.

## V. No Violation of "Special Legislation" Prohibition

■ The city board contends in its third point that section 162.1100 violates art. III, § 40 of the Missouri Constitution,[5]

which restricts the legislature's passing local and special laws. A general law is "a statute which relates to persons or things as a class," while a special law is "a statute which relates to *particular persons or things* of a class." *City of Springfield v. Sprint Spectrum, L.P.*, 203 S.W.3d 177, 184 (Mo. banc 2006) (internal citations and quotations omitted). The city board argues that section 162.1100 violates the constitutional restriction on special laws because that section only applies to the city board. Although the city board argues all of section 162.1100 is unconstitutional, it relies on subsection 3 for the basis of the alleged unconstitutionality. Section 162.1100.3 states:

In the event that the school district loses its accreditation, upon the appointment of a chief executive officer, any powers granted to any existing school board in a city not within a county on or before August 28, 1998, shall be vested with the special administrative board of the transitional school district containing such school district so long as the transitional school district exists, except as otherwise provided in section 162.621.

■ Classifications based on factors that can change are open-ended and are presumed constitutional. *Jefferson County Fire Protection Districts Assoc. v. Blunt*, 205 S.W.3d 866, 870 (Mo. banc 2006). "Such laws are not special if the classification is made on a reasonable ba-

---

5. Mo. Const. art. III, § 40 provides, in relevant part:

The general assembly shall not pass any local or special law:

\* \* \*

(21) creating offices, prescribing the powers and duties of officers in, or regulating the affairs of counties, cities, townships, election or school districts;

\* \* \*

(24) regulating the management of public schools, the building or repairing of school-

houses, and the raising of money for such purposes;

\* \* \*

(30) where a general law can be made applicable, and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject.

sis." *Id.* See also *Blaske v. Smith & Entzeroth, Inc.,* 821 S.W.2d 822, 832 (Mo. banc 1991) ("In essence, the test for 'special legislation' under article III, § 40, of the Missouri Constitution, involves the same principles and considerations that are involved in determining whether the statute violates equal protection in a situation where neither a fundamental right nor a suspect class is involved, *i.e.,* where a rational basis test applies").

If the statute's classification contains close-ended characteristics, however, the statute is facially special. *Jefferson County Fire Protection,* 205 S.W.3d at 870. Closed-ended classifications are based upon historical facts, geography, or constitutional status, which focus on immutable characteristics. *Tillis v. City of Branson,* 945 S.W.2d 447, 449 (Mo. banc 1997). Facially special laws are presumed unconstitutional. *Id.; Harris v. Missouri Gaming Comm'n,* 869 S.W.2d 58, 65 (Mo. banc 1994). The party defending a facially special law must demonstrate a substantial justification for the closed-ended classification. *Harris,* 869 S.W.2d at 65. Otherwise, the law will be struck down as unconstitutional.

It is apparent that section 162.1100 is based upon a closed-ended classification. "Legislation that is [closed-ended] typically singles out one or a few political subdivisions by permanent charac-

teristics." *Sprint,* 203 S.W.3d at 184 (quotation omitted). There is only one entity that will ever meet the description of an *"existing school board* in a city not within a county on or before August 28, 1998." (Emphasis added). Because the statute applies only to existing school boards, it contains a closed-ended classification and is facially special.

Having found that section 162.1100 is facially special, this Court next turns to the question of whether there was a substantial justification for the special treatment. *Jefferson County Fire Protection,* 205 S.W.3d at 870. Section 162.1100 originally was passed as a component of SB 781, the passage of which was a vital component of the settlement agreement disposing of federal desegregation litigation concerning St. Louis' public schools.[6] "Given the long history of state-mandated, segregated schools [in Missouri], the complexity of the issues, and the difficulty of developing a plan that will ensure that students of all races will have a continuing equal opportunity for a quality, integrated education" the state possessed a substantial justification and an important interest in reaching a settlement to dispose of the pending federal litigation. *Liddell by Liddell v. Bd. of Educ. of City of St. Louis,* 126 F.3d 1049, 1056 (8th Cir.1997). In fact, the United States Court of Appeals

---

6. In *Board of Educ. of City of St. Louis v. State,* the court sets out the general history of the desegregation litigation:

Prior to the creation of the Agreement, the St. Louis Desegregation case, *Liddell, et al. v. Board of Education, Case No. 72–0100SNL,* was pending in the United States District Court for the Eastern District of Missouri. In February 1999, the parties entered into the Agreement to resolve the desegregation case. The Agreement resolved all the parties' claims in the desegregation case and relieved all parties of the obligations imposed on them by the various

district court orders in effect at the time of the Agreement. The parties agreed as a matter of contract to abide by the terms of the Agreement and to perform their respective duties and obligations accordingly. On March 12, 1999, the District Court approved the Agreement, which is now in full force and effect. The District Court dismissed the desegregation case with prejudice.

229 S.W.3d 157, 160 (Mo.App.2007). The 1999 settlement agreement, provided in the record, was only effective when the funding contemplated by SB 781 went into effect.

for the Eighth Circuit explicitly "encourage[d] the parties to proceed diligently with their negotiations and believe[d] that the settlement coordinator should be permitted to complete this important assignment." *Id.* The creation of the TSD was a component of SB 781, the bill that enabled a settlement to be reached and ended the ongoing federal litigation.

As a result, even though section 162.1100.3 is a facially special law, a substantial justification exists for the special treatment and the creation of the TSD. *See Union Elec. Co. v. Mexico Plastic Co.*, 973 S.W.2d 170, 174 (Mo.App.1998) (discussing substantial interest of city in balancing economic interests). Section 162.1100.3, therefore, does not violate the constitutional limitation against local and special laws.

### VI. Decision not Arbitrary and Capricious

■ The city board contends that the state board's accreditation decision was arbitrary and capricious for the following reasons: (1) the Understanding Your Annual Report (UYAPR) manual should have been promulgated as a rule; (2) because the UYAPR was not promulgated as rule, the state board's decision to unaccredit the St. Louis public school district is void; (3) the code of state regulations limits the information the state board can rely on to make accreditation decisions; (4) the standards relied on by the state board are too vague; and (5) the state board considered improper information in making its accreditation decision.

■ In reviewing administrative decisions such as the state board's determination that the St. Louis public school district should lose its accreditation, courts are hesitant to second-guess the actions of the agency. *See Missouri Nat. Educ. Ass'n v. Missouri State Bd. of Educ.*, 34 S.W.3d 266, 281 (Mo.App.2000). There-

fore, unless the decision by the state board is arbitrary and capricious, it will be upheld. *See id.*

■ The burden of establishing that an administrative body acted arbitrarily or capriciously is high:

> An administrative agency acts unreasonably and arbitrarily if its decision is not based on substantial evidence. Whether an action is arbitrary focuses on whether an agency had a rational basis for its decision. Capriciousness concerns whether the agency's action was whimsical, impulsive, or unpredictable. To meet basic standards of due process and to avoid being arbitrary, unreasonable, or capricious, an agency's decision must be made using some kind of objective data rather than mere surmise, guesswork, or "gut feeling." An agency must not act in a totally subjective manner without any guidelines or criteria.

*Id.* (internal citations omitted).

### A. Failure to Promulgate UYAPR Does Not Void State Board's Decision

■ In support of its contention that the state board acted arbitrarily and capriciously, the city board challenges the validity of the state board's decision to "unaccredit" the St. Louis public school district due to DESE's failure to promulgate the UYAPR manual as a rule. The MSIP standards are established by rule, 5 CSR 50–345.100, and the MSIP Standards and Indicators Manual is incorporated within the rule. The MSIP manual sets forth the qualitative and quantitative standards for school districts, and the UYAPR is a manual prepared by DESE annually that explains the MSIP standards in more detail and provides a scoring guide and definitions utilized in DESE's review. It is this UYAPR that the city board contends DESE should have been promulgated as a rule.

Despite assertions by the city board that DESE should have promulgated the UYAPR manual as a rule, DESE lacks the ability to promulgate rules. There is no law enabling it to do so, and all rule-making must be authorized by law. *See State ex rel. Royal Ins. v. Director of Missouri Dept. of Ins.* 894 S.W.2d 159, 161 (Mo. banc 1995). The state board, however, does possess rule-making authority: "The state board of education shall: (1) Adopt rules governing its own proceedings and formulate policies for the guidance of the commissioner of education and the department of elementary and secondary education." Section 161.092.

Furthermore, it is not necessary to analyze whether the state board needed to promulgate the UYAPR as a rule. Even if this Court were to assume, *arguendo*, that the state board should have promulgated the UYAPR as a rule, the effect is that decisions made implementing the UYAPR manual are void. Such a finding, however, does not necessarily make the state board's decision to unaccredit the school district void. This Court recently decided the effect of an agency's failure to promulgate a rule in *Department of Social Services, Div. of Medical Services v. Little Hills Healthcare, L.L.C.* 236 S.W.3d 637, 643 (Mo. banc 2007). In *Little Hills*, this Court held that the failure to promulgate a rule when required "voids the decision that should have been properly promulgated as a rule." *Id.* As such, a decision that should have been promulgated as a rule is "of no legal effect." WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 2562 (1961) (defining "void").

The case at bar can be distinguished from that of *Little Hills*, where the failure to promulgate a rule, when required, voids the decision that should have been promulgated as a rule. 236 S.W.3d at 643. The decision that the St. Louis public school district should lose its accreditation was not a "decision that should have been properly promulgated as a rule." *Id.* The decision at issue is the state board's decision, not DESE's recommendation based on the UYAPR. As long as the state board's decision was supported by substantial and competent evidence, the state board's decision was not void.

The lack of a rule, although impacting the validity of a decision based on the UYAPR manual, does not negate the competency or substantial nature of the other evidence reviewed by the state board. The state board considered the advisory committee's report, information on the St. Louis public school district's financial status and accreditation history, the school district's performance for the school years 1998–99 through 2005–06, its annual performance reports, and data and information relied on by DESE in making its evaluation and recommendation. There was substantial and competent evidence to support the circuit court's finding that the state board exercised its discretion independent of DESE's recommendation and made a thorough and diligent review of the facts and circumstances surrounding the St. Louis public school district's "increasingly dismal performance."

The state board did promulgate a rule stating that it will assign classification designations of unaccredited, provisionally accredited, and accredited based on the standards of the MSIP. 5 CSR 50–345.100. The rule then explicitly incorporates the MSIP manual, which establishes the qualitative and quantitative standards for school districts. *See id.*

The state board's decision was not "whimsical, impulsive, or unpredictable." It was not mere surmise, guesswork, or "gut feeling." The state board did "not act in a totally subjective manner without any guidelines or criteria." The decision was

made upon the guidelines and criteria of the MSIP manual, and there was substantial and competent evidence to support the state board's decision. As a result, the state board's decision was not arbitrary, capricious, unreasonable, or an abuse of discretion.

**B. Review in Compliance with Code of State Regulations**

In addition to alleging that the state board's decision is arbitrary and capricious due to its consideration of DESE's invalid rule, the city board also argues the state board's decision was arbitrary and capricious because it failed to base its decision on the three standards—resource, process, and performance—identified in the MSIP rule and manual. The city board argues that the state board improperly considered only the performance standards in making its decision.

The code of state regulations incorporates by reference the *"Missouri School Improvement Program (MSIP) Standards and Indicators Manual* which is comprised of qualitative and quantitative standards for school districts." 5 CSR 50–345.100.1. The code of state regulations states:

> As referenced in the MSIP Standards and Indicators Manual, the standards are organized in three (3) sections—Resource Standards, Process Standards, and Performance Standards.... (2) During each year, the Department of Elementary and Secondary Education (DESE) will select school districts which will be reviewed and classified in accordance with this rule, including the standards, with the appropriate scoring guide and forms, and the procedures outlined in the annual MSIP. (3) The State Board of Education (board) will assign classification designations of unaccredited, provisionally accredited and

accredited based on the standards of the MSIP.

5 CSR 50–345.100.1–.3.

The city board correctly recognizes that there was not a full review of all three standards during DESE's 2006–07 review that was given to the state board. The St. Louis public school district had a full review of all three standards—resource, process, and performance—during the 2003–04 school year. During that review, DESE relied on the resource, process, and performance standards and recommended that, once again, the school district be provisionally accredited. Ordinarily, a full review of the district would not occur until 2008–09, but because of the St. Louis public school district's poor performance and because it was provisionally accredited twice in a row, the state board requested DESE conduct a mid-cycle review in 2006–07. Because the school district was "provisionally accredited" twice in a row, a mid-cycle review after three years was not only allowed but also required. 5 CSR 50–345.100(8).

This Court, however, need not determine whether the state board should have reviewed all three standards, because the city board fails to articulate any prejudice from the failure to do so. "[T]he failure of an agency to comply with its own rules may invalidate its actions only when prejudice results." *Missouri Nat. Educ. Ass'n v. Missouri State Bd. of Mediation,* 695 S.W.2d 894, 897 (Mo. banc 1985). It was only the performance standards that were reviewed and found to contribute to the loss of accreditation. At the prior review, the St. Louis public school district met the other two criteria, and there was no indication that the district's compliance was questioned during the mid-cycle review. Neither the resource nor process standards were under scrutiny—it was, instead, the performance standards that

were the matter of concern before the state board. There is no prejudice from the state board assuming the school district continues to be in compliance on two of the three sets of standards. As the city board fails to allege, let alone prove, prejudice, an assertion of arbitrary and capricious decisionmaking is unsupported by this contention.

## C. Consideration of All Relevant Information Allowed

■ The city board's next argument in support of their contention that the state board acted arbitrarily and capriciously is that the state board considered information beyond that required by the three standards of the MSIP rule. The specific information that the city board claims was improperly considered was the stability of the St. Louis public school district's leadership and other information presented in the special advisory committee report, including its recommendation. The city board also claims the state board improperly relied on information concerning the school district's finances.

While the rules do require consideration of three certain standards, they do not prohibit consideration of other relevant information outside the standards. The city board does not cite any authority to support its claim that the state board cannot consider other information. The state board acted properly in considering the St. Louis public school district's situation as a whole. This Court "would be remiss to unduly restrain the Board's discretion when it [utilized] a fair and common sense" approach to considering all the standards and relevant information. *See Curtis v. Bd. of Police Comm'rs of Kansas City*, 841 S.W.2d 259, 262 (Mo.App.1992). The state board made its decision based on guidelines and criteria in a promulgated rule, and it did not conduct an irrational review or make a decision based on guesswork by

considering other information relevant to the St. Louis public school district's stability and viability. The state board's consideration of relevant information beyond the standards does not constitute an arbitrary or capricious decision.

## D. MSIP Standards Not Vague

■ The city board's final attempt to construe the state board's decision as arbitrary and capricious is based on its allegations that the MSIP standards are vague. Although argued independently, this argument is essentially an iteration of the city board's first contention that rules were not properly promulgated and, therefore, the state board's decision is void. The city board contends that without reference to the information in the UYAPR, the MSIP standards are too vague.

■ Whether or not other information should have been promulgated in a rule does not create a valid constitutional claim that the MSIP standards are "void for vagueness." Void for vagueness constitutional claims are grounded in due process rights, which the city board does not possess. *See Committee for Educational Equality v. State*, 878 S.W.2d 446, 450 n. 3 (Mo. banc 1994) (stating that political subdivisions, such as school districts, are not considered "persons" having a constitutional right to due process).

Furthermore, the MSIP standards were clear, the code of state regulations explicitly adopts the MSIP manual, and there is nothing in the record that demonstrates that the St. Louis public school district was confused about the standards under which it was being reviewed or the criteria and information the state board was taking into consideration. This attempt to construe the state board's decision as arbitrary and capricious is unsupported by law and fails to advance the city board's argument.

## E. Board's Decision Supported by Competent and Substantial Evidence

All of the contentions of the city board are essentially reiterations of the same argument: that the state board did not rely on the correct information in making its decision. The state board received extensive documentation and possessed wide-ranging information in making its evaluation. The city board argues both that the state board did not have enough information—that the state board acquiesced to DESE's recommendation without any independent consideration—and that the state board had too much information— that it considered improper factors such as stability and financial performance. Instead, the state board's decision was supported by competent and substantial evidence relevant to the duly promulgated standards in the MSIP rule and is neither arbitrary nor capricious.

## VII. Suit Not a Chapter 536 Proceeding

The city board's next point asserts that the circuit court should have applied chapter 536 when conducting its analysis. In its amended petition, the city board relies on section 537.020, RSMo 2000, the general declaratory judgment statute, as the basis for the relief it seeks. After trial, and now on appeal, the city board claims that it is seeking a review of the state board's accreditation decision under section 536.150, RSMo 2000, *i.e.*, an 'uncontested case' review under the Missouri Administrative Procedures Act. The city board argues that chapter 536 controls in an attempt to claim, once again, that the state board's decision is void due to lack of proper rule promulgation.

The circuit court held:

As noted above, Petitioners' claims do not arise under Chapter 536, either as an "uncontested case" review under Section 536.150, or a "contested case" review under Section 536.100. Instead, Petitioners seek merely a declaratory judgment as to whether the SBOE's actions—and only the SBOE's actions— were arbitrary and capricious, or so lacking in basis or reason to be void. Accordingly, the *Little Hills Healthcare* line of cases does not apply.

Because the decision challenged is that of the state board and not DESE, as discussed above, the rule promulgation analysis of *Little Hills* fails to advance the city board's arguments. As such, whether or not chapter 536 applies and whether or not its application has any bearing on *Little Hills'* application to the case at bar has no impact on this Court's holding.[7]

## VIII. All General Powers Vest in TSD

■ The city board's final point on appeal asserts that, under section 162.1100, only those powers granted to the city board before August 28, 1998, will vest in the TSD. Therefore, the city board contends that the special administrative board

---

7. Chapter 536 would not result in a more favorable standard of review, so even if this Court applies chapter 536, it would not benefit the city board:

On appeal, the appellate court reviews the judgment of the circuit court, not the decision of the administrative agency.... Appellate review of the circuit court's judgment in a noncontested case is essentially the same as the review for a court-tried case.... Accordingly, the appellate court

reviews the circuit court's judgment to determine whether its finding that the agency decision was or was not unconstitutional, unlawful, unreasonable, arbitrary, capricious, or the product of an abuse of discretion rests on substantial evidence and correctly declares and applies the law.
*Missouri Nat. Educ. Ass'n v. Missouri State Bd. of Educ.*, 34 S.W.3d 266, 274 –275 (Mo. App.2000).

has only those powers granted the school district before August 28, 1998, and the city board retains all other powers that were granted after August 28, 1998. The city board bases its contention on the following statutory provision:

> In the event that the school district loses its accreditation, upon the appointment of a chief executive officer, *any powers granted to any existing school board in a city not within a county on or before August 28, 1998,* shall be vested with the special administrative board of the transitional school district containing such school district so long as the transitional school district exists, except as otherwise provided in section 162.621.

Section 162.1100.3 (emphasis added).

The city board argues that because the phrase "on or before August 28, 1998," modifies the phrase "any powers granted,"

*only* the powers granted to the city board on or before August 28, 1998, would vest in the special administrative board. Specifically, the city board contends that it retains the authority to collect sales tax and collect and expend the debt service levy, as these taxes were authorized after August 28, 1998.

 The city board is correct in that all powers granted prior to August 28, 1998, will vest in the TSD; however, the city board is incorrect that *only* those powers vest. Section 162.1100 expressly refers to section 162.621 and must be read in conjunction with that statute.[8] When read in conjunction with section 162.621.2, it is clear that the legislature did not intend for the city board to retain powers granted after August 28, 1998.

Section 162.621.1 is the general grant of powers to the city board.[9] Subsection 2 of

---

**8.** "In determining the intent and meaning of statutory language, the words must be considered in context and sections of the statutes *in pari materia*, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words. The provisions of a legislative act are not read in isolation but construed together, and if reasonably possible, the provisions will be harmonized with each other." *State ex rel. Evans v. Brown Builders Elec. Co., Inc.*, 254 S.W.3d 31, 35 (Mo. banc 2008) (internal citations and quotations omitted).

**9.** The powers referred to in subsection 1 of section 162.621 are:

> The board of education shall have general and supervising control, government and management of the public schools and public school property of the district in the city and shall exercise generally all powers in the administration of the public school system therein. The board of education has all the powers of other school districts under the laws of this state except as herein provided and shall perform all duties required by general laws of school districts so far as they are applicable to the public school affairs of the city and are consistent with this law. It shall appoint officers, agents and employees it deems necessary and proper and fix their compensation. The board of education may:
>
> (1) Make, amend, and repeal rules and bylaws for its meetings and proceedings, for the government, regulation and management of the public schools and school property in the city, for the transaction of its business, and the examination, qualification and employment of teachers, which rules and bylaws are binding on the board of education and all parties dealing with it until formally repealed;
>
> (2) Fix the time of its meetings;
>
> (3) Provide for special and standing committees;
>
> (4) Levy taxes authorized by law for school purposes;
>
> (5) Invest the funds of the district;
>
> (6) Purchase and hold all property, real and personal, deemed by it necessary for the purposes of public education;
>
> (7) Build and construct improvements for such purposes, and sell the same;
>
> (8) Provide for the gratuitous transportation of pupils to and from schools in cases where by reason of special circumstances pupils are required to attend schools at unusual distances from their residence.

162.621 vests those same general powers in the special administrative board if the St. Louis public school district loses its accreditation, except "as otherwise provided" in that subsection. The subsection "otherwise provide[s]" that the city board retains only the powers of auditing and public reporting. Section 162.621.2 reads:

> Except as otherwise provided in this subsection, the powers granted in subsection 1 of this section shall be vested, in the manner provided in section 162.1100, in the special administrative board of the transitional school district containing the city not within a county if the school district loses its accreditation from the state board of education. Thereafter, such powers shall immediately revert to the board of directors of the school district for any period of time for which no transitional school district containing the city not within a county is in existence. *The board of directors of the school district shall, at all times, retain auditing and public reporting powers.*

(Emphasis added). The statute does *not* recognize that powers might be retained by the city board merely because the powers were granted to the city board after August 28, 1998.

Section 162.1100 establishes the TSD, its framework, and its function, so that it could provide the transition for the educational system of the city from control and jurisdiction of the federal court school desegregation order to control by a governing body of the school district. The section also provides that the TSD retains the ability to regain authority if the school district loses its accreditation. In the event the school district loses accreditation, subsection 3 of section 162.1100 vests the special administrative board with the powers granted to the city board on or before August 28, 1998, the date the stat-

ute went into effect. The statute does indicate that all powers of the school board in existence at the time the statute went into effect would vest in the TSD if accreditation were lost. Section 162.1100, however, in no way limits the ability of section 162.621 to vest powers in the TSD beyond those established before August 28, 1998, which is what section 162.621 does—vests powers in the TSD in addition to those powers in existence prior to August 28, 1998.

To interpret the grant of power in section 162.1100.3 as reserving to the city board any powers that are granted to it after August 28, 1998, would conflict with the general grant of power to the special administrative board in section 162.621.

> In determining the intent and meaning of statutory language, the words must be considered in context and sections of the statutes *in pari materia,* as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words. The provisions of a legislative act are not read in isolation but construed together, and if reasonably possible, the provisions will be harmonized with each other.

*State ex rel. Evans v. Brown Builders Elec. Co., Inc.,* 254 S.W.3d 31, 35 (Mo. banc 2008) (internal citations and quotations omitted). Although not a model of clarity, the statutes, *in pari materia,* show that the legislature intended that the transitional board have all powers, other than the powers of auditing and public reporting.

## IX. Conclusion

The city board's challenges to the constitutionality of section 162.1100 are without merit. The statute does not violate voters' rights, due process, or the prohibition in the Missouri Constitution against special laws. Even if the UYAPR manual should have been promulgated as a rule, the record supports the circuit court's finding

that the state board's failure to promulgate the manual as a rule did not void the decision of the state board. The state board applied the criteria and standards of its MSIP manual in deciding to unaccredit the St. Louis public school district, and its decision was supported by competent and substantial evidence and was not arbitrary or capricious. Additionally, the city board failed to prove prejudice from the circuit court not reviewing the state board's decision under chapter 536. Finally, sections 162.621 and 162.1100 vest all powers of the city board in the special administrative board, except that the city board retains the powers of audit and public reporting, which the special administrative board shares with the city board.

The judgment of the circuit court is affirmed.

STITH, C.J., PRICE, RUSSELL, WOLFF and FISCHER, JJ., and SWEENEY, Sr.J., concur.

TEITELMAN, J., not participating.