**Opinion filed May 7, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00346-CR

_____

## ORLANDO ADAM JAQUEZ, Appellant
## V.
## STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 8078D**

## M E M O R A N D U M   O P I N I O N

The jury convicted appellant of murder and assessed his punishment at confinement for a term of seventy-five years in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his conviction in three issues. We affirm.

*Factual Background*

The indictment charged appellant with intentionally and knowingly causing the death of Adam Garcia by shooting him in the head with a handgun. The indictment additionally charged that he murdered Garcia by intentionally and knowingly committing an act clearly dangerous to human life with the intent to cause serious bodily injury to Garcia.

The State based its case in large part on the testimony of Juan Jose Hernandez. Appellant and Garcia were both childhood friends of Hernandez. Hernandez ran into appellant at a bar

approximately two weeks after Hernandez got out of prison. Hernandez and appellant reestablished their earlier friendship during this meeting. On the evening of October 28, 2006, appellant and Hernandez went to the "El Sitio" bar in Abilene. Hernandez drove appellant to the bar in his brother's Cadillac. Hernandez testified that appellant showed him that he had a pistol when he got into the car.

After staying at the El Sitio bar for an hour, Hernandez and appellant traveled to another bar called "Cowboys." They then returned to the El Sitio. They encountered Garcia upon returning to the El Sitio. Garcia asked Hernandez why he was hanging out with appellant. In this regard, Hernandez testified that appellant was unpopular among his friends because he had purportedly backed down from a fight. Hernandez testified that Garcia and appellant shook hands after Hernandez told Garcia that appellant told him that the backing-down incident did not occur.

As Hernandez and appellant were preparing to leave the bar, Garcia asked Hernandez for a ride to his girlfriend's house. When the group of three approached the car being driven by Hernandez, Garcia and appellant got into an argument about who would ride in the front passenger's seat. Garcia won the argument because he rode in the front seat along with Hernandez while appellant rode in the backseat. Hernandez testified that the hostilities between Garcia and appellant continued while Hernandez drove the car. Garcia called appellant various derogatory names during this episode. Hernandez testified that all three of the men were drunk at the time.

While en route to Garcia's girlfriend's house, Garcia received information during a phone call about a party on Peach Street. Hernandez then began driving to the party. On the way to the party, Hernandez heard a gunshot. Hernandez testified that, when he turned his head around toward Garcia and appellant, he observed appellant shoot Garcia in the back of the head for the second time. Appellant instructed Hernandez to continue driving. Garcia fell over onto Hernandez when he turned the corner. Appellant subsequently instructed Hernandez to stop, at which time appellant pulled Garcia out of the car by his arms and left him on the side of the road. Appellant then reentered the backseat of the car and directed Hernandez to drive him to his mother's house.

Appellant gave Hernandez another set of clothes after they arrived at appellant's mother's house because Hernandez was covered in blood. Appellant also changed clothes. Hernandez and appellant then reentered the car, and appellant instructed Hernandez to drive to appellant's sister's

house.  Appellant carried his and Hernandez's clothes wrapped in a towel with him in the car.  After arriving at appellant's sister's trailer house that was located in a wooded area, appellant attempted to clean up the blood inside of the car with a chemical cleaner and towels.  Hernandez testified that appellant also walked off into the wooded area with their clothes.  Hernandez and appellant ultimately left the car at appellant's sister's trailer house.  Hernandez called Andrea Rocha to ask for a ride back to town.  She dropped Hernandez off at his house, and she dropped appellant off at some apartments.

Hernandez called Brian Ramirez after Rocha dropped him off at his house to report that appellant had shot Garcia.  Approximately ten minutes later, one of Garcia's sisters and another female picked up Hernandez and transported him to the location where appellant dumped Garcia's body.  Ramirez and the police were already at the scene when Hernandez arrived.  Hernandez approached officers at the scene to tell them what had occurred.  Hernandez informed the police officers at the scene of the events that had occurred and the location of the vehicle and the clothing.

Marissa Seballos was appellant's former girlfriend.  She testified that appellant called her at approximately 2:00 a.m. on the night of the murder to ask if he could come over to her apartment.  Appellant spent the night at Seballos's apartment.  He remained at her apartment until the next morning when police officers arrived to arrest him.  Seballos testified that appellant told her to tell the police that she had picked him up at Cowboys at midnight.

Dr. Nizam Peerwani of the Tarrant County Medical Examiner's Office performed an autopsy on Garcia.  He testified that Garcia died as a result of receiving two gunshot wounds to the back of his head fired from a distance of twelve to fifteen inches.  The first bullet entered Garcia's skull above his left ear.  The second bullet entered his skull in the center of the back of his head.  Dr. Peerwani additionally testified that postmortem toxicology results indicated that Garcia had a blood alcohol level of .304 and that he had recently used cocaine.

Clayton Daniels, a "criminalist officer" with the Abilene Police Department, testified about blood spatter evidence in the case.  Based upon his examination of the shirt that Hernandez was wearing at the time of the shooting, Officer Daniels concluded that Hernandez's right arm was at his side at the time the shooting occurred.  His examination of blood spatter on appellant's clothing indicated appellant fired the weapon with his right arm.

3

Appellant countered Officer Daniels's conclusions with the testimony of Louis Akin, a crime scene reconstructionist retained by appellant. Akin faulted Officer Daniels for not preparing diagrams or making scientific calculations to support his findings. Akin testified that the most likely position of the shooter was behind the driver in the backseat.

*Sufficiency of the Evidence*

Appellant challenges the legal and factual sufficiency of the evidence in his first issue. To determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11.

We begin our evidentiary analysis by noting that the State offered the testimony of an eyewitness (Hernandez) that appellant murdered Garcia by shooting him twice in the back of the head. Appellant contends that the State failed to prove his guilt because Hernandez's "self-serving" testimony should be disregarded for various reasons. He first contends that Hernandez's testimony should be disregarded because he is "a known felon with a history of violence." He also asserts that Hernandez's testimony should be ignored because the physical evidence, as analyzed by appellant's expert, did not corroborate his testimony. Appellant additionally argues that the evidence supporting his conviction is insufficient because the police failed to properly investigate the possibility that Hernandez was the person that shot Garcia.

Appellant's complaints regarding Hernandez's version of the events bear directly on the credibility of his testimony. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979). Any inconsistencies in Hernandez's testimony or conflicts between it and the other evidence were exclusively within the jury's province to resolve. The jury may believe some witnesses and refuse to believe others, and it may accept portions of the testimony of a witness and reject other portions. *Lafoon v. State*, 543 S.W.2d 617 (Tex. Crim. App. 1976). Viewing the evidence in the light most favorable to the jury's verdict, we conclude the evidence is legally sufficient to support the verdict. From a factual sufficiency standpoint, the evidence supporting the verdict is not so weak that the verdict is clearly wrong and manifestly unjust when viewed in a neutral light. Additionally, the evidence supporting appellant's guilt is not against the great weight and preponderance of the conflicting evidence. In this regard, we do not find Akin's findings to be overwhelming. The jury was free to resolve any discrepancies between his findings and Officer Daniels's conclusions in favor of Officer Daniels. Appellant's first issue is overruled.

### *Reference to Appellant's Prior Incarceration*

Appellant's second and third issues concern a statement made by Julia Perales, his former girlfriend, in response to a question from the prosecutor. The State asked: "When did you start seeing him or dating him?" Perales replied: "It was whenever he was released from prison." Appellant's trial counsel immediately lodged an objection to the comment and asked to approach the bench. After the bench conference, the trial court instructed the jury as follows:

> Ladies and gentlemen, regarding the statement or the response by the witness, you are instructed to disregard that response. You are to give it no value as if it was not said. You are not to take it into your considerations for any purpose.

Appellant moved for a mistrial after the trial court gave the above-quoted instruction. He complains in his second issue that the trial court erred in failing to grant the requested mistrial. In his third issue, appellant contends that the trial court should have instructed the jury sua sponte on the burden of proof to be used when considering evidence of an extraneous offense during the guilt phase.

A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Wood v. State*, 18 S.W.3d

642, 648 (Tex. Crim. App. 2000). We review the denial of a motion for mistrial under an abuse of discretion standard. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). Under this standard, an appellate court must uphold the trial court's ruling as long as the ruling was within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

Reference by a witness to a defendant's prior incarceration is improper because it violates the long-standing general rule of evidence that prohibits the introduction of collateral offenses. *Tennard v. State*, 802 S.W.2d 678, 685 (Tex. Crim. App. 1990). A witness's inadvertent reference to an extraneous offense generally can be cured by a prompt instruction to disregard. *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998); *Sperling v. State*, 924 S.W.2d 722, 725 (Tex. App.—Amarillo 1996, pet. ref'd). We presume that a jury will obey a trial court's instruction to disregard evidence that has not been admitted. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). An exception exists when the reference to an extraneous offense was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds. *Rojas*, 986 S.W.2d at 250.

In considering whether an instruction is sufficient to cure error, courts consider whether the reference was direct or implied, intentional or inadvertent, and detailed or vague as well as whether the topic was pursued once the instruction was given. *Kipp v. State*, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994); *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992). Perales's comment was not responsive to the State's question, and our review of the record shows that it was unintentionally elicited. Although the comment was prejudicial to appellant, it was not of such character that an instruction to disregard could not have removed the impression produced in the minds of the jurors. Furthermore, after Perales made the comment, the trial court confirmed with the prosecutor that Perales had been subsequently admonished not to mention any prior bad acts in her testimony. We conclude that the trial court's prompt instruction was sufficient to cure the prejudice caused by Perales's comment. Accordingly, the trial court did not abuse its discretion in denying the motion for mistrial. Appellant's second issue is overruled.

In his third issue, appellant contends that the trial court erred in failing to sua sponte instruct the jury in the court's charge that, before it could consider the extraneous offense evidence reflected in Perales's comment, it must first find that the State proved the offense beyond a reasonable doubt.

When reviewing a challenge to the jury charge, we must first determine whether error actually exists in the charge. *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985). We conclude that the omission of a reasonable doubt instruction did not constitute error because the State did not offer evidence of an extraneous offense. In this regard, Perales's comment was not responsive to the prosecutor's questioning. Furthermore, immediately after Perales made the comment, the trial court instructed the jury to disregard it. As previously noted, we presume that the jury will obey a trial court's instruction to disregard evidence. *Ladd*, 3 S.W.3d at 567. It would be unreasonable to require the trial court to include an instruction to the jury in the court's charge about its consideration of Perales's comment after the trial court had previously instructed the jury to disregard it. Moreover, the Texas Court of Criminal Appeals has held that a trial court is not required to sua sponte instruct the jury on the burden of proof to be used when considering evidence of an extraneous offense during the guilt phase. *See Delgado v. State*, 235 S.W.3d 244, 254 (Tex. Crim. App. 2007). Appellant's third issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL<br>JUSTICE

May 7, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.